142 Mich. App. 135 (1985)
369 N.W.2d 277
UNIVERSITY MEDICAL AFFILIATES, PC
v.
WAYNE COUNTY EXECUTIVE
CURRY
v.
WAYNE COUNTY EXECUTIVE
Docket Nos. 79852, 79853.
Michigan Court of Appeals.
Decided April 16, 1985.
Michigan Legal Services (by Kathleen A. Gmeiner and Clark D. Cunningham), for Walker Curry, Donna Foster, Jason Sanderson by his next friend Robin Louwers, Joseph Whitmore and Westside Mothers.
John D. O'Hair, Corporation Counsel, for defendant.
Before: J.H. GILLIS, P.J. and HOOD and R.M. DANIELS,[*] JJ.
PER CURIAM.
We consider here two related lawsuits which have been consolidated for purposes of this appeal by leave granted August 17, 1984. On the first, plaintiffs in the University Medical Affiliates, P.C. (UMA), case appeal the Wayne County Circuit Court's denial of their request for an injunction blocking the lease of Wayne County General Hospital to Southwest Detroit Hospital. The plaintiffs in the second suit, Walker Curry and other individuals and Westside Mothers, an unincorporated *138 association of low-income persons in Wayne County which advocates the needs and rights of poor people, intervened in the suit brought by UMA and requested the same relief. Plaintiffs in the Westside Mothers case also appeal the circuit court's denial of their complaint for mandamus sought to prevent Wayne County Executive William Lucas from leasing Wayne County General Hospital.
The controversy at question here arose from the May 1, 1984, promulgation of executive order 1984-2, through which the county executive proposed to close Wayne County General Hospital on June 1, 1984. The move came in response to the actual and projected budget deficit and the fact that for many years Wayne County General had been operating at a loss of some $50,000 per day. Ten days later, UMA, a nonprofit corporation consisting of approximately 60 doctors who had contracted to provide medical services at Wayne County General, commenced an action in the circuit court for an injunction to prevent the closing of the hospital, declaratory relief, and specific performance of the contract for medical services. A temporary restraining order was entered May 16, 1984.
On June 21, 1984, the county executive and Southwest Detroit Hospital, a private corporation which operates several hospitals in the Detroit area, entered into an agreement pursuant to which Southwest Detroit agreed to lease and operate Wayne County General for 10 years with an option to purchase. The County Board of Commissioners approved that arrangement on June 25, 1984.
The plaintiffs in the Westside Mothers action filed suit July 30, 1984, requesting an order of mandamus to block the proposed lease/sale. The *139 two cases were consolidated and hearings were held June 18 and August 7, 1984. At the conclusion of the hearings, the trial court ruled, inter alia, that the county had no duty under the county charter to operate Wayne County General. Thus, plaintiff UMA's request for injunctive relief was denied. The complaint for mandamus in the Westside Mothers case was also dismissed after the court concluded that plaintiffs failed to establish a clear legal right to the requested relief. The court also held that plaintiffs failed to establish any injury arising from the lease/sale of the hospital. After reviewing the arguments raised by the plaintiffs in these appeals, we must nonetheless conclude that the trial court's rulings were correct.
The critical issue presented in both cases before us concerns the interpretation to be given Article III, § 3.117 of the Wayne County Charter, entitled "Public County Hospital Facilities". Section 3.117 reads as follows:
"The Commission shall provide by ordinance for the operation, maintenance, and administration of public County hospital facilities and shall assure an adequate level of physical and mental health services for the residents of the County."
The county having adopted a charter allowing for home rule in 1981, § 3.117 was authorized by MCL 45.515(d); MSA 5.302(15)(d), the permissive charter provision. The implementation of § 3.117 occurred when the County Board of Commissioners passed Ordinance 84-42 in February 1984, which ordinance provided for the operation of Wayne County General Hospital as a public county hospital.
On appeal, plaintiffs argue that, taken together, the enabling legislation, the county charter, and the commission ordinance create a nondiscretionary *140 duty on the part of the county to continue full operation of Wayne County General Hospital as a county owned and operated facility. Defendant, on the other hand, offers the observation that § 3.117 does not state that the county must "own" Wayne County General, or any other hospital. Rather, all that is required is that the county provide for a level of hospital services which adequately assures that county residents have access to such services. The provision vests discretion in elected county officials to choose the manner in which these services are to be made available.
Since county charter provisions are subject to the same rules of construction as statutes, Brady v Detroit, 353 Mich 243, 248; 91 NW2d 257 (1958), our task is to ascertain and give effect to the intention of the lawmakers. American Telephone & Telegraph Co v Employment Security Comm, 376 Mich 271, 279; 136 NW2d 889 (1965). In making that determination, the words of the statute (or charter provision) must be given their ordinary meaning. Chrysler Corp v Washington, 52 Mich App 229, 234; 217 NW2d 66 (1974). Further, the legislative history of the statute may be considered and, where it can be shown that certain language was affirmatively rejected, a court should not, "without a clear and cogent reason", give a statute a construction which the Legislature plainly refused to give. People v Adamowski, 340 Mich 422, 429; 65 NW2d 753 (1954). Finally, we note that the liberal construction of statutes in favor of governmental bodies is provided for in the Michigan Constitution. Const 1963, art 7, § 34.
With these rules of construction in mind, we first note that the charter provision does not contain language stating that the county must own and operate Wayne County General, nor does that interpretation flow from the common meaning of *141 the language employed. In fact, as stated in an affidavit submitted by William O'Brien, the executive director of the Wayne County Charter Commission at the time, language was proposed to the effect that the county shall "continue county ownership of Wayne County General Hospital", but this was rejected in favor of the more flexible language finally adopted. We believe this evidences an intent to vest the county officials with discretion in regard to the fulfillment of their duties under the charter. Further support for this conclusion is contained in the following comments by George E. Ward, president of the Wayne County Charter Commission:
"A section requires `the operation, maintenance and administration of public County hospital facilities,' and thus raises the question of how great an obstacle the charter would be to disposal of the current county hospital. Although the Charter Commission was committed to the view that the needs of indigents must not go unmet, it had no intention to require the county to incur the expense of retaining a 440 bed facility if the needs of indigent residents, not provided for in private hospitals, could be provided for in a far smaller county facility. Thus, the provision does not require retention of the existing county hospital, nor does it prohibit operation of the hospital by another public or private organization. If, however, both the title to and operation of the hospital were transferred outside the control of the county, then some suitable arrangement for another facility would have to be made by the county to satisfy the requirements of this section. Compliance with the section may require creative problem solving, but it clearly does not stand in the county's way of trimming, or otherwise altering substantially, the current money losing hospital operation." Ward, A Reformed Wayne County, 1981 Det Col L Rev 1013, 1029.
We conclude that § 3.117 does not require the county to "own" Wayne County General Hospital. *142 The charter provision does, however, require that the physical and mental health needs of the county residents be provided for through public hospital facilities. We find that the Patient Care Management System (PCMS) proposed by the county executive fulfills this duty. PCMS creates the authority to arrange for several facilities to meet the needs of the county's indigent population and permits the county to contract with the hospital which is geographically convenient for the recipient. The performance of PCMS at Wayne County General Hospital under the ownership of Southwest Detroit Hospital is provided for in the lease/sale contract, with Wayne County taking the responsibility for the management of PCMS. As noted by the trial court, the county still accepts financial responsibility for qualified indigent county residents under the plan. The requirements of § 3.117 are therefore satisfied.
The question presented in the appeal brought by plaintiffs in the Westside Mothers case is whether the trial court erred in denying their complaint for mandamus. Mandamus is an extraordinary remedy which will issue only where the plaintiffs prove that they have a clear legal right to performance of the specific duty sought to be compelled and that the defendant has a clear legal duty to perform the requested act. Dettore v Brighton Twp, 58 Mich App 652, 655; 228 NW2d 508 (1975). The act in question must ordinarily be ministerial, although its execution may require some discretion. Pilarowski v Brown, 76 Mich App 666, 674; 257 NW2d 211 (1977). On appeal, this Court will not interfere with the denial of a complaint for mandamus if there is evidence to support the trial court's decision. Absent an abuse of discretion, the ruling will not be disturbed. Carlson v City of Troy, 90 Mich App 543, 547; 282 NW2d 387 (1979).
*143 In light of the conclusion reached in the appeal brought by plaintiffs in the UMA case, i.e., that defendant has no legal duty to own and operate Wayne County General Hospital, plaintiffs in the Westside Mothers case clearly cannot establish the second prerequisite for the issuance of a writ of mandamus. However, we also agree with the trial court's finding as to the first prerequisite, i.e., that plaintiffs have failed to establish a clear, legal right to the performance of the requested action.[1]
Within the meaning of the rule of mandamus, a "clear, legal right" is one "clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided". 55 CJS, Mandamus, § 53, p 93. (Footnote omitted.) Even where such a right can be shown, it has long been the policy of the courts to deny the writ of mandamus to compel the performance of public duties by public officials unless the specific right involved is not possessed by citizens generally. Inglis v Public School Employees Retirement Bd, 374 Mich 10, 12-13; 131 NW2d 54 (1964).
In concluding that the plaintiffs in the Westside Mothers case had not established the prerequisites *144 for mandamus, the trial court stated, inter alia, as follows:
"The court does find, of course, that plaintiffs do not have a clear legal right for the relief they seek in this mandamus action and for one of the reasons that they have failed to set forth any showing of right to the performance of the relief requested.
"Although they each allege a possibility of needing medical care, such need cannot by simple desire or convenience transform itself into a clear legal right to receive medical care, that is, at a specific facility, that is, the Wayne County General Hospital.
"Whatever claimed rights are possessed by plaintiffs by virtue of the charter section, they are no greater than the rights of any other county resident and certainly no specific or clear legal right to treatment at Wayne County General Hospital can be gleaned from the language."
We believe these observations were well founded, and required the rejection of plaintiffs' request for a writ of mandamus pursuant to the applicable legal analysis outlined above. Plaintiffs have established neither the appropriate right on their own behalf, nor legal duty on behalf of the defendant, and thus the trial court's ruling must be affirmed as no abuse of discretion can be found.
We need not address the final issue raised by the plaintiffs in these cases, i.e., whether the trial court erred in denying their requests for a preliminary injunction, since our conclusion on the merits renders the issue moot.
Affirmed.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] In arguing this issue, plaintiffs have attempted to equate "standing" with the legal right which must be established in a mandamus action. The terms, however, are not synonymous. A "right" is a just, legal claim. Black's Law Dictionary (4th ed, 1968), p 1487. "Standing", on the other hand, connotes a violation of that right which gives rise to damages to the right holder. Inglis v Public School Employees Retirement Bd, 374 Mich 10, 12-13; 131 NW2d 54 (1964). Thus, one may have a clear, legal right to the performance of a specific action but may not be entitled to a writ of mandamus because the right has not been violated and no damages have ensued. The converse, however, is not necessarily true. One cannot have "standing" without first having a clear, legal right to the performance of the act sought. The terms have different meanings and we thus reject plaintiff's argument that the law applicable to the question of standing must be utilized to determine the existence of a clear, legal right to the performance of the requested action.