# STATE OF MICHIGAN

# COURT OF APPEALS

---

RENTAL PROPERTIES OWNERS
ASSOCIATION OF KENT COUNTY, 3830 G,
L.L.C., RUSTY RICHTER, AFFORDABLE
HOUSING COALITION, CHARLIE CURTIS,
JEFF FORTUNA, JAMES KANE, DANIEL
HIBMA, KEYSTONE REALTY GROUP, L.L.C.,
GREG McKEE, JOSH BECKETT, and
MICHAEL BECKETT,

       Plaintiffs-Appellants,

v

KENT COUNTY TREASURER, COUNTY OF
KENT, and KENT COUNTY LAND BANK
AUTHORITY,

       Defendants-Appellees,
and

KENT COUNTY TAXPAYERS ALLIANCE,

       Amicus Curiae.

FOR PUBLICATION
December 18, 2014
9:00 a.m.

No. 314256
Kent Circuit Court
LC No. 12-009669-CH

---

KENT COUNTY LAND BANK AUTHORITY,

       Petitioner-Appellee,

v

3830 G, L.L.C., RUSTY RICHTER,
AFFORDABLE HOUSING COALITION,
CHARLIE CURTIS, JEFF FORTUNA, JAMES
KANE, DANIEL HIBMA, KEYSTONE REALTY
GROUP, L.L.C., GREG McKEE, JOSH
BECKETT, and MICHAEL BECKETT,,

       Appellants.

No. 314318
Kent Circuit Court
LC No. 12-008120-CH

---

-1-

RENTAL PROPERTIES OWNERS
ASSOCIATION OF KENT COUNTY, 3830 G,
L.L.C., RUSTY RICHTER, AFFORDABLE
HOUSING COALITION, CHARLIE CURTIS,
JEFF FORTUNA, JAMES KANE, DANIEL
HIBMA, KEYSTONE REALTY GROUP, L.L.C.,
CIERIA CHAVEZ, ROSIE BAKER, and
SHARON HALL,

    Plaintiffs-Appellants,

and

GREG McKEE,

   Plaintiff,

v

No. 319733
Kent Circuit Court

KENT COUNTY TREASURER, CITY OF   LC No. 13-006798-CH
GRAND RAPIDS, and KENT COUNTY LAND
BANK AUTHORITY,

    Defendants-Appellees.

Before: SHAPIRO, P.J., and WHITBECK and STEPHENS, JJ.

PER CURIAM.

  In these consolidated appeals, various individuals, companies, and associations involved in property ownership, rehabilitation, and development in Kent County (the 3830 G parties)[1] seek to invalidate tax deeds executed by the Kent County Treasurer (the Treasurer) to Kent County (the County) and the city of Grand Rapids (the City) and from the County and the City to Kent County Land Bank Authority (KCLBA), claiming that their actions deprived the 3830 G parties of the opportunity to purchase the properties. The appealed orders were all decided by the same circuit court judge on different dates.

---

[1] For clarity purposes, the various individuals, companies, and associations that are plaintiffs in docket nos. 314256 and 319733 and appellants in docket no. 314318 are collectively referred to as "the 3830 G parties" even though there is a slight variance in the named plaintiffs and appellants in the three cases, respectively. Where necessary the parties are identified individually.

In Docket No. 314256, the 3830 G parties appeal as of right the December 20, 2012 trial court order granting summary disposition in favor of the appellees. We affirm.

In Docket No. 314318, the 3830 G parties appeal as of right the trial court's December 26, 2012 order denying their motion to set aside the quiet-title and foreclosure judgment entered in favor of petitioner, KCLBA. We affirm.

In Docket No. 319733, the 3830 G parties appeal as of right the trial court's December 6, 2013 order granting summary disposition in favor of all appellees. We affirm.

This Court ordered the appeals consolidated.[2]

## I. BACKGROUND

### Docket Nos. 314256, 314318

In 2012, the Treasurer foreclosed on numerous properties in Kent County (the County properties). On June 28, 2012, and July 12, 2012, the County adopted resolutions authorizing the County to purchase county tax-foreclosed properties and sell those properties to KCLBA, allegedly as the result of an agreement between the County, the Treasurer, and KCLBA. The Treasurer conveyed the county properties to KCLBA on July 18, 2012. KCLBA filed a petition for expedited quiet title and foreclosure of the County properties on August 29, 2012. The trial court granted KCLBA's petition on October 19, 2012, noting that KCLBA had complied with all notice, service, and publication requirements.

The 3830 G parties filed a complaint against Kent County Treasurer, Kent County, and KCLBA in Kent Circuit Court on October 17, 2012, and filed a first amended complaint on December 6, 2012, seeking declaratory and injunctive relief. They claimed that the Treasurer, the County, and KCLBA's actions violated MCL 124.755 and deprived the 3830 G parties of an opportunity to bid on and purchase any of the County properties. The 3830 G parties also alleged that Kent County violated its own policies and breached its fiduciary and Constitutional duties with respect to the purchase and resale of the County properties.

The 3830 G parties filed a motion to set aside the October 19, 2012 quiet-title and foreclosure judgment pursuant to MCR 2.603(D), MCR 2.611(A)(1)(a) and (e), or MCR 2.612(1)(a), (b), and (f), to intervene in KCLBA's quiet-title and foreclosure action, and to consolidate that action with the 3830 G parties' December 6, 2012 case. The trial court denied the 3830 G parties' motion to set aside the quiet-title and foreclosure judgment, concluding that:

> [the motion is] not timely because [it was] not filed prior to the October 19 Order quieting title; procedurally defective in that plaintiffs failed to submit a pleading as required by MCR 2.209(C)(2), no legitimate basis here. The Legislature

---

[2] *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, unpublished order of the Court of Appeals, entered February 25, 2014 (Docket Nos. 314256, 314318, 319733).

created a specific statutory scheme which excludes more general remedies. And there's no violation here of due process.

> The 3830 G plaintiffs were aware of the expedited quiet title and foreclosure action, at least as early as October 9. And even if the argument could be made that they lacked actual notice, the public notice provided by posting and publication satisfies due process requirements.

The County and the Treasurer filed a joint motion for summary disposition in 12-00969 on November 30, 2012, and KCLBA filed a motion for summary disposition on December 10, 2012.

The trial court granted the motions for summary disposition, reasoning:

> First, the Court's of the opinion that this motion should be granted. [3830 G parties] lack standing, due to both their failure to identify an actual controversy as required by [MCR] 2.605, and the Court's determination that [the 3830 G parties] do not have a special injury right or substantial interest that would be detrimentally affected in a manner different from the citizenry at large.

> Next, the Court finds no actions by the County Treasurer or Kent County itself that exceeded the powers conferred by the Constitution and laws of this State.

> Finally, the Court's October 19 Order quieting title in the properties bars [the 3830 G parties'] attempts to challenge that title. Summary disposition is granted . . . pursuant to MCR 2.116(C)(5), (7) and (8).

*Docket No. 319733*

In 2013, the Treasurer foreclosed on numerous properties (the Grand Rapids properties) in the city of Grand Rapids as a result of the owners' failure to pay real property taxes and assessments. The properties were not redeemed from the foreclosures. On June 18, 2013, Grand Rapids entered into a development agreement with KCLBA to acquire the Grand Rapids properties. KCLBA placed money in escrow for the City to purchase the Grand Rapids properties from Kent County Treasurer. The City adopted a resolution determining that acquisition of the Grand Rapids properties constituted a public purpose under the city's policy in connection with its obligation to provide for the health, safety and welfare of the community and authorized their purchase from the County Treasurer. The properties were thereafter conveyed by the City to KCLBA to "fulfill the public purpose of restoring blighted properties and neighborhoods and providing housing on tax-reverted abandoned properties." The Grand Rapids properties were thereafter sold to KCLBA by the City for the amount paid by the City to the County Treasurer for the properties, plus the cost of recording fees.

The 3830 G parties filed a complaint in Kent Circuit Court on July 19, 2013, against Kent County Treasurer, Grand Rapids, and KCLBA, and a first amended complaint on September 27,

2013. The 3830 G parties sought injunctive relief and a writ of mandamus, claiming that Kent County, Kent County Treasurer, and KCLBA's actions in acquiring the Grand Rapids properties violated MCL 124.755 because the City never intended to own the properties, many of the properties were not blighted, and KCLBA paid a fraction of the value of the Grand Rapids properties. The 3830 G parties also claimed that they were denied due process because the City was merely a conduit and not a genuine purchaser of the Grand Rapids properties, depriving them of the opportunity guaranteed by the statute and the Constitution to participate in an open, reasonable and fair bidding process on the subject properties. Finally, the 3830 G parties asserted that by disposing of the Grand Rapids properties at less than fair market value, the city breached its fiduciary duty to its residents and violated Const 1963, art 7, § 26, which prohibits an entity from lending credit to another entity.

On motion by Kent County Treasurer, Grand Rapids, and KCLBA, this case was re-assigned to the judge to whom docket nos. 314256 and 314318 were assigned. On August 23, 2013, the Treasurer, the City, and KCLBA filed a joint motion for summary disposition on counts I and II of the 3830 G parties' complaint and the City filed a separate motion for summary disposition on count III of the 3830 G parties' complaint. A second joint motion for summary disposition was filed on November 15, 2013. Following a hearing on all of the motions, the trial court granted the motions for summary disposition, reasoning:

> All right. The Court has viewed the briefs and heard the arguments here today, and the Court sees essentially no difference between this year's case and last year's case. The Court sees no violation of the statutes here with what the County Treasurer and the City of Grand Rapids and [KCLBA] have done, so motion for summary disposition is granted.

This Court consolidated this case with docket nos. 314256 and 314318 in an unpublished order of the Court of Appeals, entered February 25, 2014 (Docket Nos. 314256, 314318, 319733).

## II. STATUTORY COMPLIANCE

The trial court granted summary disposition to the Kent County Treasurer, County of Kent, the City of Grand Rapids, and the Kent County Land Bank Authority,[3] and dismissed the 3830 G parties' amended complaint based on MCR 2.116(C)(5), (7), and (8). The essence of the appellant's argument is that the process through which KCLBA obtained title to the City and County foreclosed properties was in violation of the law. Their first claim is that the properties were obtained in direct contravention of the authority granted to the units of government and the governmental officer under MCL 211.78m and MCL 124.755(6). They also argue that the county Treasurer, the County, and the City violated ordinances, policies or resolutions. In both cases we disagree. This is an issue of first impression.

---

[3] These parties will collectively be referred to as "the defendants". Where necessary the parties are identified individually.

In docket no. 319733, the 3830 G parties first argue that, under MCL 124.755(6), the Kent County Treasurer could not transfer the tax-foreclosed properties to KCLBA until after the properties were sold at public auction. We conclude otherwise.

With respect to statutory interpretation our Supreme Court has stated:

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, the words of a statute provide the most reliable evidence of its intent[.] [*Krohn v Home-Owners Ins Co*, 490 Mich 145, 156-157; 802 NW2d 281 (2011) (citations and quotation marks omitted).]

Thus, if the statute's language is clear and unambiguous, judicial construction is not required or permitted. *In re Certified Question (Kenneth Henes, Special Projects Procurement v Continental Biomass Indus, Inc)*, 468 Mich 109, 113; 659 NW2d 597 (2003) (quotation marks and citation omitted). In addition, "nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself." *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011).

A foreclosing governmental unit may not transfer property subject to foreclosure under MCL 211.78 to MCL 211.78p to a land bank authority "until after the property has been offered for sale or other transfer under [MCL 211.78m] and the foreclosing governmental unit has retained possession of the property under [MCL 211.78m(7)]." MCL 124.755(6). Under the General Property Tax Act (GPTA), MCL 211.1 et seq., the phrase "foreclosing governmental unit" means (1) the treasurer of a county, or (2) this state (under circumstances not present in this case). MCL 211.78(8). In this case, Kent County Treasurer is the foreclosing governmental unit. The 3830 G parties assert that Kent County Treasurer, in its role as the foreclosing governmental unit, effectively violated the MCL 124.755(6) prohibition because transfer of the tax-foreclosed properties without an auction to Kent County was a "sham," with the "real" transferee being KCLBA.

 MCL 124.755(6), which is part of the Land Bank Fast Track Act, MCL 124.751 *et seq.*, read in conjunction with the GPTA provides that a foreclosing governmental unit may not transfer property subject to foreclosure under MC 211.78 to MCL 211.78p "until after the property has been offered for sale or other transfer under [MCL 211.78m] and the foreclosing governmental unit has retained possession of the property under [MCL 211.78m]."

Under the GPTA, when property taxes are delinquent for two years, the property is forfeited to the county treasurer. MCL 211.78a; MCL 211.78g. The governmental unit in which the tax-delinquent property is located may foreclose after the property taxes are delinquent for at least two years. MCL 211.78a; MCL 211.78g; MCL 211.78h. Once title is vested in the foreclosing governmental unit, the state is granted the right of first refusal to purchase the tax-

foreclosed property at the greater of the minimum bid or its fair market value. MCL 211.78m(1). However, if the state elects not to purchase the property

> a city, village, or township may purchase for a public purpose any property located within that city, village, or township set forth in the judgment and subject to sale under this section by payment to the foreclosing governmental unit of the minimum bid. *If a city, village, or township does not purchase that property, the county in which that property is located may purchase that property under this section by payment to the foreclosing governmental unit of the minimum bid. If property is purchased by a city, village, township, or county under this subsection, the foreclosing governmental unit shall convey the property to the purchasing city, village, township, or county within 30 days.* If property purchased by a city, village, township, or county under this subsection is subsequently sold for an amount in excess of the minimum bid and all costs incurred relating to demolition, renovation, improvements, or infrastructure development, the excess amount shall be returned to the delinquent tax property sales proceeds account for the year in which the property was purchased by the city, village, township, or county or, if this state is the foreclosing governmental unit within a county, to the land reutilization fund created under section 78n. Upon the request of the foreclosing governmental unit, a city, village, township, or county that purchased property under this subsection shall provide to the foreclosing governmental unit without cost information regarding any subsequent sale or transfer of the property. *This subsection applies to the purchase of property by this state, a city, village, or township, or a county prior to a sale held under subsection (2).* [MCL 211.78m(1) (emphasis added).]

In this case, in accordance with MCL 211.78m(1), Kent County purchased the Kent County tax-foreclosed properties for the minimum bid; it thereafter transferred the properties to KCLBA. The Kent County tax-foreclosed properties were never available for public auction, nor were the 3830 G parties ever specifically rejected from the bidding process. Thus, Kent County had authority to purchase the Kent County tax-foreclosed properties from the Kent County Treasurer for the minimum bid.

> MCL 211.78m(2) next provides:

> > *Subject to subsection (1), . . . the foreclosing governmental unit . . . shall hold at least 2 property sales at 1 or more convenient locations at which property foreclosed by the judgment entered under section 78k shall be sold by auction sale, which may include an auction sale conducted via an internet website.* Notice of the time and location of the sales shall be published not less than 30 days before each sale in a newspaper published and circulated in the county in which the property is located, if there is one. If no newspaper is published in that county, publication shall be made in a newspaper published and circulated in an adjoining county. Each sale shall be completed before the first Tuesday in November immediately succeeding the entry of judgment under section 78k vesting absolute title to the tax delinquent property in the foreclosing governmental unit. Except as provided in subsection (5), property shall be sold to the person bidding the highest

amount above the minimum bid. The foreclosing governmental unit may sell parcels individually or may offer 2 or more parcels for sale as a group. The minimum bid for a group of parcels shall equal the sum of the minimum bid for each parcel included in the group. The foreclosing governmental unit may adopt procedures governing the conduct of the sale and may cancel the sale prior to the issuance of a deed under this subsection if authorized under the procedures. The foreclosing governmental unit may require full payment by cash, certified check, or money order at the close of each day's bidding. Not more than 30 days after the date of a sale under this subsection, the foreclosing governmental unit shall convey the property by deed to the person bidding the highest amount above the minimum bid. The deed shall vest fee simple title to the property in the person bidding the highest amount above the minimum bid, unless the foreclosing governmental unit discovers a defect in the foreclosure of the property under sections 78 to 78l. If this state is the foreclosing governmental unit within a county, the department of natural resources shall conduct the sale of property under this subsection and subsections (4) and (5) on behalf of this state. [Emphasis added.]

In brief, if the city, village, township, or county does not purchase the tax-foreclosed property, a public auction is held, with the tax-foreclosed property sold to the person bidding the highest amount above the minimum bid. MCL 211.78m(2). Reading MCL 211.78m(1) and (2) together, the language clearly provides that subsection (1) applies specifically to those situations where the tax-foreclosed property has been purchased from the foreclosing governmental unit by either the state, or the city, village, or township, or the county in which the tax-foreclosed property was located. The final sentence in MCL 211.78m(1) supports this conclusion: "This subsection applies to the purchase of property by this state, a city, village, or township, or a county *prior to a sale held under subsection (2)*." Thus, the Kent County tax-foreclosed properties were properly purchased by Kent County from the Kent County Treasurer.

Contrary to the 3830 G parties' argument, MCL 211.78m(2) did not require Kent County to offer for sale by public auction the Kent County tax-foreclosed properties. Rather, MCL 211.78m(2), by its own language, requires the foreclosing governmental unit to hold public auctions to sell the foreclosed properties. See *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009) (stating that the first criterion in determining the Legislature's intent is the specific language of the statute). Because the term "foreclosing governmental unit" is defined in MCL 211.78(8), that definition controls. *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007). In this case, the Kent County Treasurer, and not Kent County, was the foreclosing governmental unit. MCL 211.78(8). Thus, once Kent County purchased the tax-foreclosed properties from Kent County Treasurer pursuant to MCL 211.78m(1), there was no requirement that its later sale of those properties be by public auction. Notwithstanding the 3830 G parties' argument that Kent County acted as a "straw-man" in the transaction, requiring the state, a city, village, or township, or a county to subsequently sell by public auction foreclosed properties it had purchased under MCL 211.78m(1), would inappropriately read language into MCL 211.78m(2); by its express words, subsection 2 specifically applies to sales by the foreclosing governmental unit after the state, a city, village, or township, or a county have not exercised their respective right to purchase the property under MCL 211.78m(1). See *Mich Ed Ass'n*, 489 Mich at 217.

The 3830 G parties also misinterpret MCL 124.755(6) as requiring Kent County to hold an auction before it sold the tax-foreclosed properties to KCLBA. The Land Bank Fast Track Act authorizes a land bank authority to purchase real property. MCL 124.755(1). It also authorizes a land bank authority to purchase property from a foreclosing governmental unit under the GPTA. The Land Bank Fast Track Act also provides:

> A *foreclosing governmental unit* may not transfer property subject to forfeiture, foreclosure, and sale under . . . MCL 211.78 to MCL 211.78p, until after the property has been offered for sale or other transfer under . . . MCL 211.78m, and the *foreclosing governmental unit* has retained possession of the property under . . . MCL 211.78m. [MCL 124.755(6) (emphasis added).]

The language is clear and unambiguous and must be interpreted as written. *In re Certified Question*, 468 Mich at 113. MCL 124.755(6), which states that the procedures under MCL 211.78m must be followed, by its very terms only applies to transfers of foreclosed properties by the foreclosing governmental unit. As stated earlier in this discussion section, Kent County Treasurer is the foreclosing governmental unit in this case, not Kent County. Kent County Treasurer did not retain possession of the tax-foreclosed properties, rather, it sold them to Kent County pursuant to MCL 211.78m(1). Accordingly, Kent County did not violate MCL 124.755(6) when it sold the tax-foreclosed properties to KCLBA. We find no support for a requirement that a public auction be held after the purchase of a foreclosed property by either the city or the county.

The 3830 G parties essentially assert that Kent County was not a true owner of the properties before they were then sold to KCLBA and that Kent County Treasurer is the party who actually sold the properties to KCLBA, contrary to MCL 124.755(6). While their concerns are understandable, it does not negate the fact that Kent County did in fact purchase the properties from Kent County Treasurer and that MCL 124.755(6) and MCL 211.78m do not place restrictions on, or even address, a local governmental unit's use or subsequent sale of such properties. This Court may not read language into the statutes to prevent the transactions in this case. *Mich Ed Ass'n*, 489 Mich at 217. See also *Robinson v Detroit*, 462 Mich 439, 474; 613 NW2d 307 (2000) (CORRIGAN, J., concurring) ("If the Legislature acted unwisely in enacting the statute or failing to adequately debate its merits, the judiciary may not act to save the Legislature from its folly").

Thus, the trial court did not err by concluding that Kent County did not violate MCL 211.78m(1) and (2), and MCL 124.755(6) when it purchased the tax-foreclosed properties from Kent County Treasurer and thereafter sold those same properties to KCLBA

The 3830 G parties again argue here that Grand Rapid's purchase of the properties was a "ruse" to disguise the violation, that KCLBA inappropriately funded Grand Rapid's purchase of the properties from the Kent County Treasurer, and that the Legislature did not intend for local governmental units to act as a "straw man" to avoid a public sale of the properties. The 3830 G parties rely on *Rutland Twp v City of Hastings*, 413 Mich 560; 321 NW2d 647 (1982), to argue that this Court should reject the "straw-man" transaction and look at the real transaction.

In *Rutland*, the plaintiff township filed an action, seeking a declaration that a purported annexation of a parcel of land by the defendant city was void. The property was originally owned by the private defendants, who conveyed the property to the defendant city. On the same date, the defendant city gave the private defendants an option to repurchase the property and adopted a resolution annexing the parcel. The private defendants exercised the option and repurchased the property. *Id*. at 562. The transaction was repeated one month later to exclude a portion of the property that included buildings, contrary to MCL 117.9(8). *Id*. at 562-563. The defendant city admitted "that the sole purpose of its purchase of the parcel was to permit annexation of the parcel without seeking the approval of the township or the State Boundary Commission." *Id*. at 563. The Court invalidated the annexation, concluding that the "city's purported 'ownership' was a mere subterfuge to avoid the safeguards found in the annexation statutes by taking advantage of what is meant to be a narrow exception for vacant city-owned property." *Id*. at 565.

The 3830 G parties' reliance on *Rutland Twp* is misplaced because *Rutland Twp* is factually dissimilar this case. Unlike *Rutland*, which involved an analysis of MCL 117.9(8) (annexation of property by a city under the Home Rule City Act, MCL 117.1, et seq.), this case involved the interplay between MCL 124.755 (Land Bank Fast Track Act) and MCL 211.78m (General Property Tax Act). Also, unlike *Rutland*, in which the city defendant admitted that the sole purpose of the transaction was to avoid seeking approval from the township or the boundary commission, Grand Rapids has not admitted that it purchased the properties to avoid a public auction. In fact, Grand Rapids purchased the properties as part of its obligation to provide for the health, safety, and welfare of its community and then conveyed them to KCLBA to fulfill the public purpose of restoring blighted properties and neighborhoods and to provide housing on tax-foreclosed properties. Language cannot be read into MCL 211.78m to proscribe how Grand Rapids chooses to effectuate the public purpose. Although Grand Rapids entered into an agreement with KCLBA before purchasing the properties from Kent County Treasurer, and KCLBA placed the money in escrow for Grand Rapids to purchase the properties from Kent County Treasurer, it does not follow from the *Rutland Twp* analysis that the transactions should be invalidated under MCL 124.755(6) as a "sham."

Reading MCL 124.755 and MCL 211.78m together, the GPTA creates a scheme where the foreclosing governmental unit must offer the tax-foreclosed properties for sale to the state first, then the city, village, or township, then the county in which the property is located. MCL 211.78m(1). Any purchase by the city, village, township, or county must be for a public purpose. MCL 211.78m(1). The purchase in this case was for a public purpose, which was to restore blighted properties and to provide housing on tax-foreclosed properties. Other than the restriction that the purchase be for a public purpose, the Legislature did not restrict in any way how the city may convey the property thereafter. MCL 211.78m. The existing contract to sell the property to KCLBA immediately after it purchased the properties, as well as the terms related to financing the sale, do not invalidate Grand Rapid's purchase of the tax-foreclosed properties. The Land Bank Fast Track Act, MCL 124.751 et seq., grants land banks broad authority to acquire by purchase, "or otherwise on terms and conditions and in a manner the authority considers proper," real property. MCL 124.755(1). The act contains no language limiting a land bank's authority to provide interim funding for a local government to purchase tax-foreclosed properties. MCL 124.755(6). The act also broadly grants the land bank authority to "implement the purposes, objectives, and provisions of this act," and to "enter into contracts and other

instruments necessary, incidental, or convenient to the performance of its duties and the exercise of its powers . . ." MCL 124.754(1)(d). Thus, the trial court did not err by concluding that Grand Rapids, like Kent County, did not violate MCL 124.755(6) or MCL 211.78m when it purchased the Kent County tax-foreclosed properties from the Kent Country Treasurer and then immediately sold them to KCLBA.

The 3830 G parties also erroneously rely on MCL 124.773 to argue that, by using Kent County to allow the Kent County Treasurer to transfer property to KCLBA, KCLBA exceeded the authority granted to county land banks. However, as noted by Kent County and Kent County Treasurer in their appeal brief (p 19), MCL 124.773 does not even apply to KCLBA as a local board authority; rather, the statute explicitly states that it applies to the state authority (as defined MCL 124.753(p) and MCL 124.765). Thus, the 3830 G parties cannot rely on MCL 124.773 to argue that Kent County's sale of the tax-foreclosed properties to KCLBA violated Michigan law.

## III. MANDAMUS

The 3830 G parties' challenge to the validity of the tax-foreclosed property deeds by way of mandamus also fails. This Court reviews for an abuse of discretion a trial court's decision on a writ of mandamus. *Coalition for a Safer Detroit v Detroit City Clerk*, 295 Mich App 362, 367; 820 NW2d 208 (2012). However, the first two elements required for issuance of a writ of mandamus—that defendants have a clear legal duty to perform and plaintiffs have a clear legal right to performance of the requested act—are reviewed de novo as a question of law. *Id*.

To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that: (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result." *Hanlin v Saugatuck Twp*, 299 Mich App 233, 248; 829 NW2d 335 (2013). In relation to a request for mandamus, "a clear legal right" is "one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided." *Univ Med Affiliates, PC v Wayne Co Executive*, 142 Mich App 135, 143; 369 NW2d 277 (1985) (quotation marks and citation omitted). "Even where such a right can be shown, it has long been the policy of the courts to deny the writ of mandamus to compel the performance of public duties by public officials unless the specific right involved is not possessed by citizens generally." *Id*.

Again as in docket no. 314256, the Kent County Treasurer was not required by MCL 211.78m to offer the tax-foreclosed properties for sale at public auction because Grand Rapids purchased the properties first. Thus, the 3830 G parties did not have a clear, legal right to performance of the specific duty sought, *Hanlin*, 299 Mich App at 248, and the trial court did not abuse its discretion by denying the request for mandamus, *Coalition for a Safer Detroit*, 295 Mich App at 367.

The trial court did not err by granting summary disposition in favor of defendants under MCR 2.116(C)(8). The trial court did not err by concluding that Grand Rapids, like Kent County, did not violate MCL 124.755(6) or MCL 211.78m when it purchased the Kent County tax-foreclosed properties from the Kent Country Treasurer and then immediately sold them to KCLBA.

IV. DUE PROCESS AND CONSTITUTIONAL VIOLATIONS

Next, the 3830 G parties argue that the process by which KCLBA obtained the properties violated due process and otherwise ran afoul of Constitutional guarantees. Again, we disagree.

The trial court granted summary disposition under MCR 2.116(C)(8) in both docket nos. 314256, regarding Kent County, and 319733, regarding the City of Grand Rapids. This Court reviews de novo motions for summary disposition under MCR 2.116(C)(8). *Spiek v Mich Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(8) "tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted." *Id*. "The motion must be granted if no factual development could justify the plaintiffs' claim for relief." *Id*. This Court also reviews de novo issues of law involving statutory construction. *Klooster v Charlevoix*, 488 Mich 289, 295-296, 795 NW2d 578 (2011).

MCL 124.759 provides the procedure by which a land bank authority may initiate an expedited quiet title and foreclosure action. The land bank authority must record a notice of the pending expedited quiet title and foreclosure with the register of deeds in the county in which the property is located. MCL 124.759(1). Among other things not at issue here, the notice must include a statement that any legal interests in the property may be extinguished by a circuit court order vesting title to the property in the authority. *Id*. After notice is recorded, the authority shall initiate a search of records to identify the owners of a property interest in the property who are entitled to notice of the quiet title and foreclosure hearing. MCL 124.759(2). The owner of a property interest is entitled to notice under this section if that owner's interest was identifiable before the authority recorded notice. *Id*. The authority must search county register of deeds land title records, county treasurer tax records, local assessor tax records, and local treasurer tax records to identify the owner of a property interest who is entitled to notice of the expedited quiet title and foreclosure action. *Id*. The authority may file a petition in the circuit court, listing all the property for which the authority seeks to quiet title; the petition must "include a date, within 90 days, on which the authority requests a hearing on the petitioner." MCL 124.759(3). The clerk is required to immediately set the date, time, and place for a hearing on the petition and the hearing shall not be more than 10 days after the date requested by the authority in the petition. MCL 124.759(4).

The 3830 G parties argue under MCR 2.612(a) and (f) that the quiet-title and foreclosure judgment should be set aside because they were not given notice of the petition hearing date in the manner required by MCL 124.759(3). This argument has no merit. The 3830 G parties were not entitled to notice of the proceedings because only the owner of a property interest in the tax-foreclosed properties was entitled to notice of the petition being filed. MCL 124.759(2). To hold otherwise would inappropriately read language into the statute. *Mich Ed Ass'n*, 489 Mich at 217. Because they were not entitled to notice, the quiet-title and foreclosure judgment cannot be set aside under either MCR 2.612(C)(1)(a) or (f) on the basis that the notification-of-petitioner requirement was violated.

Moreover, even if they were entitled to notice, the trial court did not abuse its discretion by concluding that the judgment should not be set aside on the basis that KCLBA allegedly violated their due process rights when it did not immediately request a hearing date as required

-12-

by MCL 124.759(3). No person may be deprived of life, liberty or property without due process of law. US Const, Am V; US Const, Am XIV; Const 1963, art 1, § 17. Due process generally requires notice and an opportunity to be heard. *Dusenbery v United States*, 534 US 161, 167; 122 S Ct 694; 151 L Ed 2d 597 (2002); *Republic Bank v Genesee Co Treasurer*, 471 Mich 732, 742; 690 NW2d 917 (2005). MCL 124.759(19) specifically states that the failure of the authority to follow a requirement in MCL 124.759 relating to the quiet-title and foreclosure proceeding under that section does not create a cause of action against an authority "unless the minimum requirements of due process . . . are violated."

The 3830 G parties' due process rights were not violated by the notice provided in the petition and the quiet-title and foreclosure proceedings. KCLBA's petition was filed on August 29, 2012, requesting that a hearing be held within 90 days, contrary to MCL 124.759(3), which requires the petition to include a specific date on which the hearing will be held. While the date was not specified within the petition, notices of the proceedings were posted at each of the Kent County tax-foreclosed properties, notice of the October 19, 2012 hearing was published for each parcel of property on September 19, September 26, and October 3, 2012, and notices of expedited quiet title and foreclosure proceedings were also mailed by certified mail and first class mail to the "occupants" of each parcel of property. Each of the notices indicated that the hearing on KCLBA's petition was scheduled for October 19, 2012. In addition, the circuit court register of actions indicates on October 11, 2012 that the motion to quiet title was scheduled for October 19, 2012.

These notices provided the 3830 G parties notice of an opportunity to be heard in relation to the petition sufficient to satisfy due process. *Dusenbery*, 534 US at 167; *Republic Bank*, 471 Mich at 742. In addition, the 3830 G parties had actual notice of the October 19, 2012 motion to quiet title hearing before the judgment was entered, which also satisfies the fundamental requirements of due process. See *Alycekay Co v Hasko Constr Co, Inc*, 180 Mich App 502, 506; 448 NW2d 43 (1989) (concluding that where the trustee received actual notice of the claim, the service of process that was effected "satisfied fundamental requirements of due process and was not a substantial defect" in the process).

## V. KENT COUNTY FIDUCIARY DUTY

The 3830 G parties also argue that Kent County exceeded its authority and violated its fiduciary duties to its taxpayers when it sold the tax-foreclosed properties to KCLBA at a price allegedly below their market values. The 3830 G parties did not raise these arguments in their statement of questions presented and thus they are not properly presented for appellate review. *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001). Regardless, these arguments are without merit.

First, the resolutions passed by Kent County's board of commissioners did not violate county resolutions regarding the sale of county-owned property. It is the policy of Kent County to seek to maximize the benefits to the taxpayers in the sale, disposal, or transfer of any property

owned by Kent County. Kent County Resolution 12-12-02-191, ¶ I.1.a. While in general the minimum price accepted for real property to be sold by Kent County must be based on an appraisal, property that is requested by other public entities may be sold by Kent County without requiring competitive proposals and upon the approval of the board of commissioners. *Id*. at II.3.c. and II.5. Because KCLBA is a public entity, MCL 124.773(6)(a), contrary to the 3830 G parties' argument, Kent County did not violate its policies when it sold the tax-foreclosed properties to KCLBA without first obtaining competitive proposals.

Second, Kent County stated a county purpose behind its purchase of the Kent County tax-foreclosed properties. It is a valid public purpose for a land bank fast track authority, like KCLBA, to acquire tax-reverted property as a way to strengthen and revitalize the economy of where it is located. MCL 124.752. The minutes from the meeting in which the board voted to purchase the properties from Kent County Treasurer provide in full:

> WHEREAS, 64 properties . . . are part of 325 parcels that have all been foreclosed by the Kent County Treasurer for nonpayment of real property taxes in 2012; and
>
> WHEREAS, pursuant to MCL 211.78m, Kent County has the right to acquire tax-foreclosed properties prior to them being offered for sale at auction by paying the minimum bid price. Kent County has the right to sell these properties to the Kent County Land Bank Authority (KCLBA); and
>
> WHEREAS, *KCLBA has reviewed the entire list of 325 parcels and has now identified 43 properties that either meet the criteria for following its strategic plan or have been requested to be acquired on behalf of the local unit where it is located*; and
>
> WHEREAS, *four local non-profit developers are interested in acquiring and redeveloping 21 additional properties*. Treasurer Parish requests that the County acquire and transfer ownership of these parcels to KCLBA; and
>
> WHEREAS, no recording fees are required for a transfer to the KCLBA. Corporate Counsel will review and approve the transfer documents before execution.
>
> NOW THEREFORE, BE IT RESOLVED that the Board of Commissioners hereby exercise its right to purchase 64 parcels for the minimum bid price and sell them to the KCLBA at the same minimum bid price for future redevelopment and sale and that the Treasurer be authorized to sign the necessary documents. [Emphasis added.]

Thus, because Kent County resolved that the tax-foreclosed properties meet KCLBA's strategic plan, were requested by the local government, or for redevelopment, and KCLBA's acquisition of property is a valid public purpose involving the revitalization of the economy, MCL 124.752, Kent County's sale of the properties to KCLBA did fulfill a valid county purpose of revitalization.

Further, the 3830 G parties cannot rely on MCL 46.11 and MCL 46.358 to argue that Kent County exceeded its authority when it sold the tax-foreclosed properties to KCLBA. MCL 46.11(c) provides that Kent County's board of commissioners has the authority to sell real estate belonging to the county. MCL 46.358 grants a county commission authority to acquire real property for public parks, preserves, etc., on behalf of the county. Neither of these provisions limits a county's authority to purchase tax-foreclosed properties from Kent County Treasurer and then resell them to KCLBA at the same price. Moreover, the Michigan Constitution provides that constitutional provisions relating to counties "shall be liberally construed in their favor." Const 1963, art VII, § 34. In addition, "[p]owers granted to counties . . . by [the] constitution and by law shall include those fairly implied and not prohibited by [the] constitution." *Id*. Because MCL 211.78m(1) authorizes a foreclosing governmental unit to sell tax-foreclosed property to a county, Kent County by implication had authority to purchase the tax-foreclosed properties. Const 1963, art VII, § 34. Furthermore, the statute does not prohibit a county from reselling tax-foreclosed properties it purchased; to hold otherwise would inappropriately read language into the statute. *Mich Ed Ass'n*, 489 Mich at 217.

Kent County did not violate its policies or resolutions when it purchased the tax-foreclosed properties from Kent County Treasurer and then sold them to KCLBA without a competitive-bid process.

## VI. COLLATERAL ESTOPPEL

The 3830 G parties argue that the trial court erred when it determined that their claims in docket no. 314256 were barred by the quiet-title and foreclosure judgment obtained by KCLBA in docket no, 314318. We agree, but find the error harmless in light of our affirmance of the trial court's order summarily dismissing the 3830 G parties' amended complaint under MCR 2.116(C)(8), above.

KCLBA argued that the 3830 G parties' complaint in docket no. 314256 was barred by the prior quiet-title and foreclosure judgment and the trial court addressed this issue when it granted summary disposition in favor of all defendants in part based on MCR 2.116(C)(7).

"This Court reviews de novo a trial court's decision on a motion for summary disposition pursuant to MCR 2.116(C)(7) to determine whether the moving party was entitled to judgment as a matter of law." *Duncan v Michigan*, 300 Mich App 176, 194; 832 NW2d 761 (2013). The application of legal doctrines, like collateral estoppel, is a question of law that this Court reviews de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). Even if the trial court erred by granting summary disposition under a particular subrule, this Court will not reverse if the error was harmless; this Court must determine "whether declining to grant a new trial, set aside a verdict, or vacate, modify, otherwise disturb a judgment or order appears to the court to be inconsistent with substantial justice." *Chastain v Gen Motors Corp*, 254 Mich App 576, 586; 657 NW2d 804 (2002) (quotation marks and citation omitted).

A land bank authority like KCLBA may initiate an expedited quiet title and foreclosure action to quiet title to real property by recording notice of the pending action with the register of deeds in the relevant county. MCL 124.759(1). The land bank authority must initiate a search of records to identify the owners of a property interest in the property who are entitled to notice of

hearing on such an action and any identified property-interest owner is entitled to notice of the action. MCL 124.759(2). The land bank authority may file a petition in the circuit court listing all the properties subject to the expedited quiet title and foreclosure action and seeking a judgment in favor of the land bank authority; the petition must include a date within 90 days on which the authority requests a hearing. MCL 124.759(3).

If a petition for expedited quiet title and foreclosure is filed under MCL 124.759(3), a person claiming an interest in a parcel of property set forth in the petition who desires to contest that petition must "file written objections with the clerk of the circuit court and serve those objections on the [land bank] authority before the date of the hearing." MCL 124.759(11). The judgment must specify, in part, that all existing recorded and unrecorded interest in that property are extinguished (except in certain limited circumstances not at issue in this case) and that fee simple title to the foreclosed property is vested absolutely in the land bank authority. MCL 124.759(11)(b) and (e); MCL 124.759(12). Under MCL 124.759(12) the judgment may not be modified, stayed, or held invalid except as provided in MCL 124.759(13), which allows a land bank authority or person claiming to have a property interest under MCL 124.759(2) to appeal the trial court's foreclosure order within 21 days to the court of appeals. Moreover, if the judgment of foreclosure is entered under MCL 124.759(12), "the owner of any extinguished recorded or unrecorded interest in that property who claims that he or she did not receive notice of the expedited quiet title and foreclosure action shall not bring an action for possession of the property against any subsequent owner, but may only bring an action to recover monetary damages as provided in this subsection."

The 3830 G parties claim that their complaint in 12-009669-CH is not barred by the foreclosure judgment obtained by KCLBA in 12-008120-CH because the foreclosures procedures outlined in MCL 124.759 apply only to parties asserting an existing property interest, unlike the 3830 G parties who assert a right in bidding at the public auction proceeding required by statute (MCL 124.755(6) and MCL 211.78m). It is unnecessary to address this aspect of their argument because the 3830 G parties were not a party in the 12-008120-CH foreclosure proceeding and the judgment in that action cannot be used to collaterally estop the 3830 G's complaint in 12-009669-CH.

Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding. *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006). Collateral estoppel is a flexible rule intended to relieve parties of multiple litigation, conserve judicial resources, and encourage reliance on adjudication. *Detroit v Qualls*, 434 Mich 340, 357 n 30; 454 NW2d 374 (1990).

Generally, application of collateral estoppel requires (1) that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) that the same parties had a full and fair opportunity to litigate the issue, and (3) mutuality. *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004).

In the subsequent action, the ultimate issue to be concluded must be the same as that involved in the first action. *Qualls*, 434 Mich at 357. The issues must be identical, and not merely similar. *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 340; 657 NW2d 759 (2002).

-16-

In addition, the common ultimate issues must have been both actually and necessarily litigated. *Qualls*, 434 Mich at 357.

To be actually litigated, a question must be put into issue by the pleadings, submitted to the trier of fact, and determined by the trier. *VanDeventer v Mich Nat'l Bank*, 172 Mich App 456, 463; 432 NW2d 338 (1988). The parties must have had a full and fair opportunity to litigate the issues in the first action. *Keywell & Rosenfeld*, 254 Mich App at 340.

For collateral estoppel to apply, the parties in the second action must be the same as or privy to the parties in the first action. *VanVorous v Burmeister*, 262 Mich App 467, 480; 687 NW2d 132 (2004). A party is one who was directly interested in the subject matter, and had a right to defend or to control the proceedings and to appeal from the judgment, while a privy is one who, after the judgment, has an interest in the matter affected by the judgment through one of the parties, as by inheritance, succession, or purchase. *Husted v Auto-Owners Ins Co*, 213 Mich App 547, 556; 540 NW2d 743 (1995), aff'd 459 Mich 500 (1999).

In this case, the October 19, 2012 judgment quieting title of the Kent County tax-foreclosed properties in KCLBA 12-008120-CH does not bar the 3830 G parties' amended complaint in 12-009669-CH. Collateral estoppel does not apply because the parties in this action are not the same as those involved in the first action. While KCLBA was involved in both the quiet-title and foreclosure action and this action, the 3830 G parties were not involved in the quiet-title and foreclosure action. While the 3830 G parties were interested in the subject matter in the quiet-title and foreclosure action, they did not have a right to defend or control the proceedings. *Id*. In fact, the trial court denied their motion to intervene in the quiet-title and foreclosure action and as a result the 3830 G parties also did not have a full and fair opportunity to litigate the issues raised in their complaint relative to the facts surrounding the sale of the Kent County tax-foreclosed properties in the first action; thus, the issue of KCLBA's ownership of those properties was not actually litigated. *Keywell & Rosenfeld*, 254 Mich App at 340. Accordingly, the trial court erred by concluding that the 3830 G parties' complaint was barred by the prior quiet-title and foreclosure judgment under MCR 2.116(7).

While the trial court erred by granting summary disposition to defendants on the basis of collateral estoppel, the error was harmless because summary disposition was appropriate under MCR 2.116(C)(8). *Chastain*, 254 Mich App at 586.

## VII. THE QUIET-TITLE ACTION

In docket no. 314318, the trial court denied the 3830 G parties' motion to set aside the quiet-title and foreclosure judgment on the basis that (1) it was not timely filed, (2) the 3830 G parties failed to submit a pleading as required by MCR 2.209(C)(2), and (3) there was no due-process violation because actual notice was achieved. Upon review, we find that the trial court did not abuse its discretion by denying the 3830 G parties' motion to set aside the judgment brought under MCR 2.612(C)(1)(a), (b), and (f). Further, that the trial court did not abuse its discretion by denying the 3830 G parties' motion to set aside under 2.611(A)(1)(a) and (e), albeit for the wrong reasons. Finally, that the trial court's failure to set aside the quiet title and foreclosure judgment under MCR 2.611(A)(1)(g) did not constitute plain error affecting the 3830 G parties' substantial rights.

This Court reviews for an abuse of discretion a trial court's decision on a motion to set aside judgment under MCR 2.612. *Alken–Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227, 600 NW2d 638 (1999). This Court also reviews for an abuse of discretion the trial court's decision to grant or deny motions for a new trial under MCR 2.116. *Gilbert v DaimlerChrysler Corp, 470 Mich 749, 761;* 685 NW2d 391 (2004). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Bay City v Bay Co Treasurer*, 292 Mich App 156, 164; 807 NW2d 892 (2011). The determination whether a party has been afforded due process is a question of law subject to de novo review on appeal. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013); *In re Moroun*, 295 Mich App 312, 331; 814 NW2d 319 (2012).

In addition, this Court also reviews de novo issues of law involving statutory construction, *Klooster*, 488 Mich at 295–296, as well as the proper interpretation and application of a court rule, *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). Finally, unpreserved error may be considered if (1) failure to do so would result in manifest injustice, (2) consideration is necessary for a proper determination of the case, or (3) the issue involves a question of law, and the facts necessary for its resolution have been presented. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 377; 761 NW2d 353, 362 (2008). An unpreserved nonconstitutional claim of error is reviewed for plain error affecting substantial rights. *People v Grant*, 445 Mich 535, 552-553; 520 NW2d 123 (1994); *Veltman v Detroit Edison Co*, 261 Mich App 685, 690; 683 NW2d 707 (2004) (applying the unpreserved plain error standard to civil cases).

## A. MCR 2.611

In docket no. 314318, the 3830 G parties argue that the trial court abused its discretion by denying their "motion to set aside" brought under MCR 2.611(A)(1)(a) and (e). We conclude that the trial court reached the correct result of denying 3830 G parties' motion to set aside the quiet title and foreclosure judgment under MCR 2.611(A)(1)(a) and (e), but for the wrong reasons.

Our Supreme Court has stated:

> This Court uses the principles of statutory construction when interpreting a Michigan court rule. We begin by considering the plain language of the court rule in order to ascertain its meaning. The intent of the rule must be determined from an examination of the court rule itself and its place within the structure of the Michigan Court Rules as a whole. [*Henry*, 484 Mich at 495 (quotation marks and citations omitted.]

In relevant part, MCR 2.611(A)(1) provides:

> *A new trial may be granted* to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:

(a) Irregularity in the proceedings of the court, jury, or prevailing party, or an order of the court or abuse of discretion which denied the moving party a fair trial.

\* \* \*

(e) A verdict or decision against the great weight of the evidence or contrary to law. [Emphasis added.]

By its plain language, MCR 2.611(1) applies only to judgments reached following a trial. *Henry*, 484 Mich at 495. In 12-008120-CH, the trial court entered judgment on KCLBA's petition for quiet title and foreclosure of the tax-foreclosed properties; there was no trial and there was thus no judgment following a trial to be set aside. Thus, by its very terms, a motion under this rule must be preceded by a trial on the merits, which did not occur in this action and the 3830 G parties were not entitled to relief under this court rule. MCR 2.611(1)(a) and (e); *Henry*, 484 Mich at 495. Although the trial court erred by addressing the 3830 G parties' motion to set aside the quiet title and foreclosure judgment on the merits under MCR 2.611, the right result (denial of motion to set aside the judgment under MCR 2.611(1)(a and (e)) should be affirmed. See *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

### B. MCR 2.612

MCR 2.612 governs how a party may obtain relief from a judgment or order. MCR 2.612(C)(1)(a) and (f) provide in part:

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

\* \* \*

(f) Any other reason justifying relief from the operation of the judgment.

As noted earlier in the Due Process section, the 3830 parties premised their argument that the trial court erred in denying them relief from judgment on the mistaken assertion that they were not given the proper notice regarding the petitions to expedite pursuant to MCL 124.759. Again, since they were not entitled to notice, the 3830 parties cannot demonstrate any error in the underlying judgment that entitles them to relief under this court rule.

## VIII.  OTHER CLAIMS OF ERROR

The 3830 G parties also argue, for the first time on appeal, that the quiet title and foreclosure judgment entered in 12-008120-CH should also be set aside under MCR 2.611(1)(g), which provides that a new trial may be granted when a party's substantial rights are affected because of an "[e]rror of law occurring in the proceedings, or mistake of fact by the court."  As stated earlier, the 3830 G parties are not entitled to relief under MCR 2.611(1), *Henry*, 484 Mich at 495, because the judgment in 12-008120-CH is not the result of a trial.  Thus, they cannot demonstrate plain error affecting their substantial rights and the trial court's denial of the 3830 G motion to set aside judgment will not be reversed on this basis.  *Grant*, 445 Mich at 552-553; *Veltman*, 261 Mich App at 690.

The 3830 G parties also offered numerous arguments regarding the trial court's determination that they lacked standing.  The question of standing is only significant in relation to the ability to bring the rejected assertions of statutory, policy and constitutional error.  Therefore, we need not address standing to resolve this case.

## IX.  CONCLUSION

In docket nos. 314256 and 319733, we affirm the trial court's order granting summary disposition.  In docket no. 314318, we affirm the trial court's order denying the motion to set aside the quiet-title and foreclosure judgment.

/s/ Douglas B. Shapiro
/s/ Cynthia Diane Stephens

Whitbeck, J., not participating, having resigned from the Court of Appeals effective November 21, 2014.