GERMAINE *v.* GOVERNOR.

1. CONSTITUTIONAL LAW—CERTIORARI—PUBLIC OFFICERS, REMOVAL
   —SEPARATION OF DEPARTMENTS OF GOVERNMENT.
   Certiorari does not lie to review the determination of the
   governor of the State removing from office the mayor of
   Traverse City, in proceedings under 1 Comp. Laws, § 1159
   (1 How. Stat. [2d Ed.] § 1310). To permit judicial re-
   view of such removal proceedings in an action directly
   against the governor would invade the functions of the
   executive department and violate the Constitution, art. 4,
   §§ 1, 2.

2. SAME.
   It is not important in Michigan whether the act of the
   executive is ministerial or judicial in its nature; the
   judicial department is not authorized to interfere with
   the determination of a co-ordinate branch of the govern-
   ment, although the courts may exercise jurisdiction to
   pass upon the validity of the proceedings in a cause aris-
   ing between private parties claiming rights thereunder.

On motion to quash a writ of certiorari issued at
the petition of William D. C. Germaine against Wood-
bridge N. Ferris, governor of the State of Michigan,
to review proceedings wherein petitioner was re-
moved from the office of mayor of Traverse City.
Submitted June 24, 1913. (Calendar No. 25,698.)
Writ quashed July 18, 1913.

*Grant Fellows,* Attorney General, for the motion.

*Parm C. Gilbert (John J. Tweddle,* of counsel),
*contra.*

KUHN, J. This is a motion to enter an order quash-
ing a writ of certiorari heretofore issued by this
court. The reasons urged in support of the motion
are as follows:

"(1) That this court has no jurisdiction to review, by writ of certiorari directed to the governor, any action of the governor in the discharge of his official duties under the Constitution and laws of the State.

"(2) That under the Constitution and laws of the State of Michigan the executive and judicial branches of the State are co-ordinate, and that the action of the executive department of the State government is not subject to review by the judiciary upon writ of certiorari directed to the executive branch of the State government.

"(3) Because the action of respondent here sought to be reviewed was the exercise of an official discretion belonging to the executive and not reviewable upon certiorari."

The respondent, as governor of the State, by virtue of authority given him by section 1159, 1 Comp. Laws (1 How. Stat. [2d Ed.] § 1310), made an order removing the petitioner from the office of mayor of Traverse City. The section reads as follows:

"The governor may remove all county officers chosen by the electors of any county or appointed by him, and shall also remove all justices of the peace and township officers chosen by the electors of any township, or city or village officers chosen by the electors of any city or village, when he shall be satisfied from sufficient evidence submitted to him, as hereinafter provided, that such officer is incompetent to execute properly the duties of his office, or has been guilty of official misconduct, or of wilful neglect of duty, or of extortion, or habitual drunkenness, or has been convicted of being drunk, or whenever it shall appear by a certified copy of the judgment of a court of record of this State that such officer after his election or appointment shall have been convicted of a felony; but the governor shall take no action upon any such charges made to him against any such officer until the same shall have been exhibited to him in writing, verified by the affidavit of the party making them, that he believes the charges to be true, with a statement of the prosecuting attorney of the county, that in his opinion the case demands investigation. But no such officer shall be removed for such miscon-

duct or neglect unless charges thereof shall have been exhibited to the governor, as above provided, and a copy of the same served on such officer, and an opportunity given him of being heard in his defense."

The power conferred by this statute was not granted to the person who is the incumbent of the executive office as a private person, but it is conferred upon the governor in his official capacity. The power pertains to the office of governor, and when he acts by virtue of the statute it is an executive action and it is none the less an official act of the governor because the power might have been intrusted to some other person or authority.

It is urged that the governor in this proceeding acted judicially and that therefore such action is subject to review by certiorari, and in support of that position the case of *Dullam* v. *Willson,* 53 Mich. 392 (19 N. W. 112, 51 Am. Rep. 128), is relied upon. In that proceeding, however, no process was issued against the governor direct, and the validity of the removal proceeding was raised by quo warranto. This is the first instance called to our attention in our State where an attempt is made to review the action of the governor of the State by a writ of certiorari. Granting that the contention of counsel for petitioner is correct, that the function performed by the executive in the removal proceedings is quasi judicial in character, the fact still remains that it is an official action of the governor, and the question arises whether an effort to review his action by proceeding directly against him would not involve the fundamental proposition that such review would be an invasion by the judiciary of the executive functions of our government.

Article 4 of the Constitution of this State, on the subject of the division of the powers of government, provides:

"SECTION 1. The powers of government are divided into three departments: The legislative, executive, and judicial.

"SEC. 2. No person belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in this Constitution."

The question of whether mandamus will lie to compel the governor of a State to perform duties imposed upon him has been raised in this State and in many other jurisdictions. It is well settled by all authorities that mandamus will not lie to compel the governor to perform duties of a purely executive or political character, but the decisions are not uniform as to the power of the court to compel the governor to discharge those duties which, as to other officials, are usually called ministerial. However, this question has been settled in this State by the very instructive case of *People, ex rel. Sutherland*, v. *Governor*, 29 Mich. 320 (18 Am. Rep. 89). The application in this case was for mandamus to require the governor to issue his certificate showing that the Portage lake and Lake Superior ship canal and harbor had been constructed in conformity with the acts of congress making a land grant for the same and the acts of the legislature of this State conferring the grant upon a corporation which the relators claimed to represent, and it was urged that the act sought to be compelled by mandamus was a purely ministerial one. Mr. Justice COOLEY, in the able opinion in that case, discusses at length the question of the jurisdiction of the court to review the action of the executive by proceeding directly against him and declined to distinguish between those acts which are political and those which are ministerial. His reasoning is so clear and instructive and so controlling of the present question that we quote the following (29 Mich., on pages 322-325 [18 Am. Rep. 89]):

"There is no very clear and palpable line of distinction between those duties of the governor which are political and those which are to be considered ministerial merely; and if we should undertake to draw one, and to declare that in all cases falling on one side the line the governor was subject to judicial process, and in all falling on the other he was independent of it, we should open the doors to an endless train of litigation, and the cases would be numerous in which neither the governor nor the parties would be able to determine whether his conclusion was, under the law, to be final, and the courts would be appealed to by every dissatisfied party to subject a co-ordinate department of the government to their jurisdiction. However desirable a power in the judiciary to interfere in such cases might seem from the standpoint of interested parties, it is manifest that harmony of action between the executive and judicial departments would be directly threatened, and that the exercise of such power could only be justified on most imperative reasons. Moreover, it is not customary in our republican government to confer upon the governor duties merely ministerial, and in the performance of which he is to be left to no discretion whatever; and the presumption in all cases must be, where a duty is devolved upon the chief executive of the State rather than upon an inferior officer, that it is so because his superior judgment, discretion, and sense of responsibility were confided in for a more accurate, faithful, and discreet performance than could be relied upon if the duty were devolved upon an officer chosen for inferior duties. And if we concede that cases may be pointed out in which it is manifest that the governor is left to no discretion, the present is certainly not among them, for here, by the law, he is required to judge, on a personal inspection of the work, and must give his certificate on his own judgment, and not on that of any other person, officer, or department.

"We are not disposed, however, in the present case, to attempt on any grounds to distinguish it from other cases of executive duty with a view to lay down a narrow rule which, while disposing of this motion, may leave the grave question it presents to be presented again and again in other cases which the

ingenuity of counsel may be able to distinguish in some minor particulars from the one before us. If a broad general principle underlies all these cases, and requires the same decision in all, it would scarcely be respectful to the governor or consistent with our own sense of duty, that we should seek to avoid its application and strive to decide each in succession upon some narrow and perhaps technical point peculiar to the special case, if such might be discovered.

"And that there is such a broad general principle seems to us very plain. Our government is one whose powers have been carefully apportioned between three distinct departments, which emanate alike from the people, have their powers alike limited and defined by the Constitution, are of equal dignity, and within their respective spheres of action equally independent. One makes the laws, another applies the laws in contested cases, while the third must see that the laws are executed. This division is accepted as a necessity in all free governments, and the very apportionment of power to one department is understood to be a prohibition of its exercise by either of the others. The executive is forbidden to exercise judicial power by the same implication which forbids the courts to take upon themselves his duties.

"It is true that neither of the departments can operate in all respects independently of the others, and that what are called the checks and balances of government constitute each a restraint upon the rest. The legislature prescribes rules of action for the courts, and in many particulars may increase or diminish their jurisdiction; it also, in many cases, may prescribe rules for executive action, and impose duties upon, or take powers from the governor, while in turn the governor may veto legislative acts, and the courts may declare them void where they conflict with the Constitution, notwithstanding, after having been passed by the legislature, they have received the governor's approval. But in each of these cases the action of the department which controls, modifies, or in any manner influences that of another, is had strictly within its own sphere, and for that reason gives no occasion for conflict, controversy, or jealousy. The legislature in prescribing rules for the courts is acting within its proper province in making laws,

while the courts, in declining to enforce an unconstitutional law, are in like manner acting within their proper province, because they are only applying that which is law to the controversies in which they are called upon to give judgment. It is mainly by means of these checks and balances that the officers of the several departments are kept within their jurisdiction, and if they are disregarded in any case, and power is usurped or abused, the remedy is by impeachment, and not by another department of the government attempting to correct the wrong by asserting a superior authority over that which by the Constitution is its equal.

"It has long been a maxim in this country that the legislature cannot dictate to the courts what their judgments shall be or set aside or alter such judgments after they have been rendered. If it could, constitutional liberty would cease to exist; and if the legislature could in like manner override executive action also, the government would become only a despotism under popular forms. On the other hand it would be readily conceded that no court can compel the legislature to make or to refrain from making laws, or to meet or adjourn at its command, or to take any action whatsoever, though the duty to take it be made ever so clear by the Constitution or the laws. In these cases the exemption of the one department from the control of the other is not only implied in the framework of government, but is indispensably necessary if any useful apportionment of power is to exist."

Again, 29 Mich., on page 330 of the opinion (18 Am. Rep. 89) :

"And while we should concede, if jurisdiction was plainly vested in us, the inability to enforce our judgment would be no sufficient reason for failing to pronounce it, especially against an officer who would be presumed ready and anxious in all cases to render obedience to the law, yet in a case where jurisdiction is involved in doubt it is not consistent with the dignity of the court to pronounce judgments which may be disregarded with impunity, nor with that of the executive to place him in a position where, in a

matter within his own province, he must act contrary to his judgment, or stand convicted of a disregard of the laws.

"But it is said that this conclusion will leave parties who have rights, in many cases, without remedy. Practically, there are a great many such cases, but theoretically, there are none at all. All wrongs, certainly, are not redressed by the judicial department. A party may be deprived of a right by a wrong verdict, or an erroneous ruling of a judge, and though the error may be manifest to all others than those who are to decide upon his rights, he will be without redress. A person lawfully chosen to the legislature may have his seat given by the house to another, and be thus wronged without remedy. A just claim against the State may be rejected by the board of auditors, and neither the governor nor the courts can give relief. A convicted person may conclusively demonstrate his innocence to the governor, and still be denied a pardon. In which one of these cases could the denial of redress by the proper tribunal constitute any ground for interference by any other authority? The law must leave the final decision upon every claim and every controversy somewhere, and when that decision has been made, it must be accepted as correct. The presumption is just as conclusive in favor of executive action as in favor of judicial. The party applying for action, which, under the Constitution and laws, depends on the executive discretion, or is to be determined by the executive judgment, if he fails to obtain it, has sought the proper remedy and must submit to the decision."

The reasoning in this case seems to us to establish the rule in this State that no process of the court can be issued against the governor of this State in any proceeding seeking to review any action performed by him as governor under power conferred upon him either by the Constitution or legislative enactment. In the case of *People, ex rel. Ayres,* v. *Board of State Auditors,* 42 Mich. 422, on page 426 (4 N. W. 274), in citing the *Sutherland Case,* this court said:

"It has also been held that we cannot interfere with

the discretion of the chief executive of the State or subordinate him to our process."

See, also, *Board of Supervisors* v. *Auditor General,* 27 Mich. 165.

The decisions in those States that have held that a writ may issue to control a ministerial act of the governor rest chiefly upon the case of *Marbury* v. *Madison,* 1 Cranch (U. S.), 137. In speaking of these decisions, Justice COOLEY, in *People, ex rel. Sutherland,* v. *Governor, supra,* 29 Mich., at page 327 (18 Am. Rep. 89), said:

"These cases for the most part are rested upon the dictum of Chief Justice Marshall in *Marbury* v. *Madison,* 1 Cranch [U. S.], 137, that one of the heads of department in the Federal government might be compelled by mandamus to perform a mere ministerial duty; a dictum which cannot be understood as expressive of the opinion of that eminent judge that the president was subject to the like process, but which is wholly inapplicable to a case like the present, unless it goes to that extent. For it cannot justly be claimed, when Federal and State governments have been formed, so far as distribution of power is concerned, on the same general plan, that the executive of the Union can claim immunity from judicial process any more than the governor of one of the States. In many cases it is unquestionable that the head of an executive department may be required by judicial process to perform a legal duty, while in other cases, in our judgment, the courts would be entirely without jurisdiction; and, as regards such an officer, we should concede that the nature of the case and of the duty to be performed must determine the right of the court to interfere in each particular instance. When the head of a department acts as the mere assistant or agent of the executive in the performance of a political or discretionary act, he is no more subject to the control of the courts than the chief executive himself; but where a ministerial act is required to be done by him, independently of the executive, though in a certain sense he is an executive officer, it would be as idle

176 MICH.—38.

to dispute his responsibility to legal process, as it would be to make the same claim to exemption on behalf of an officer intrusted with similar duties of a lower grade. This is emphatically the case under the Constitution of this State, which provides for the election of State and inferior officers alike by the people, and makes the chief officers of State below the governor as independent of his control in the performance of their duties as are the officers of the counties or of the townships."

The following instructive cases from other jurisdictions with similar holdings have been called to our attention and examined: *State* v. *Governor,* 25 N. J. Law (1 Dutcher), 331; *Hawkins* v. *Governor,* 1 Ark. 570 (33 Am. Dec. 346); *Mauran* v. *Governor,* 8 R. I. 192 (5 Am. Rep. 564); *People, ex rel. Billings,* v. *Governor,* 19 Ill. 229 (68 Am. Dec. 591); *State, ex rel. Robb,* v. *Governor,* 120 Mo. 428 (25 S. W. 376, 23 L. R. A. 194, 41 Am. St. Rep. 705); *State, ex rel. Bisbee,* v. *Governor,* 17 Fla. 67; *Appeal of Hartranft, Governor,* 85 Pa. 433 (27 Am. Rep. 667); *Rice* v. *Governor,* 19 Minn. 103 (Gil. 74), (18 Am. Rep. 330); *State, ex rel. Oliver,* v. *Governor,* 22 La. Ann. 1 (2 Am. Rep. 712); *Vicksburg, etc., R. Co.* v. *Governor,* 61 Miss. 102 (48 Am. Rep. 76); *Dennett, Petitioner,* 32 Me. 508 (54 Am. Dec. 602); *Governor* v. *State, ex rel. Schuck,* 127 Ind. 588 (27 N. E. 175, 11 L. R. A. 763, 22 Am. St. Rep. 663).

In the case of *Bates* v. *Taylor,* 87 Tenn. 320, 323 (11 S. W. 266, 3 L. R. A. 316), the *Sutherland Case* is cited with approval and the court said:

"The courts of Ohio, Alabama, California, Maryland, and North Carolina are together in holding that the governor may be required by mandamus to perform duties of the latter class; while the courts of Arkansas, Georgia, Illinois, Louisiana, Maine, Minnesota, New Jersey, and Rhode Island have uniformly held the contrary, upon the ground that the powers of government in the States are distributed among three departments, which, under the organic law, are

to be and remain independent of each other. High on Extraordinary Legal Remedies, §§ 118, 119, 120, and 121.

"This author cites the cases from the different States mentioned. We have examined them, and also a very instructive case from Michigan *(People, ex rel. Sutherland,* v. *Governor,* 29 Mich. 321 [18 Am. Rep. 89]), which is in accord with those from the States last mentioned, and we are fully persuaded not only that the weight of authority, but also the weight of reason is against the power of the courts to coerce the chief executive of a State into the performance of any official duty."

The attorney general, representing respondent, makes no claim that in a proceeding between A. and B., in which A. asserts some rights by virtue of executive action, that the courts cannot determine the validity of that executive action. This court held, in *Dullam* v. *Willson, supra,* that in such an action the validity of the governor's proceedings could be reviewed and the rights of a person who had been removed from office by the governor, without proper compliance with the requirements of the statute with reference to removals, would be protected. That decision fully lays down the rule applicable in such cases and, in our opinion, affords ample protection against any unwarranted or illegal act on the part of the executive in removal proceedings.

The writ was improvidently issued and must be quashed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.