PEOPLE v EGLESTON

PEOPLE v WIGHT

Docket Nos. 50760, 50761. Submitted June 11, 1981, at Lansing.—
    Decided February 22, 1982.

    Louis Egleston and Burt Wight were charged in Saginaw Circuit
    Court with possession of tools and implements for producing
    counterfeit checks of General Motors Saginaw Gear Steering
    Division and Delta College. The court, Joseph R. McDonald, J.,
    granted defendants' motion to quash the informations against
    them, holding that the statute under which defendants were
    charged did not apply to their conduct. The people appeal.
    *Held:*

    A community college district is a political subdivision of the
    state for purposes of the counterfeiting tools statute. The trial
    court erred in holding that checks drawn by Delta College on
    its funds in a commercial bank were not "notes, certificates,
    [or] bills of credit issued by lawful authority for any debt of
    [the] state, or any of its political subdivisions or municipali-
    ties".

    Reversed and remanded.

1. Forgery — Uttering and Publishing — Counterfeiting Tools
    — State Instruments.

    The statutes addressing the forgery and uttering and publishing
    of public instruments refer not to instruments drawn on public
    entities but to instruments *issued by* public entities; likewise,
    the specific language of the counterfeiting tools statute covers
    instruments issued by the state or its political subdivisions,
    though not necessarily drawn on them (MCL 750.249, 750.253,
    750.255; MSA 28.446, 28.450, 28.452).

References for Points in Headnotes

[1] 20 Am Jur 2d, Counterfeiting § 3.
[2, 3] 73 Am Jur 2d, Statutes §§ 293, 295, 296, 300.
[4] 56 Am Jur ed, Municipal Corporations, Counties, and Other
    Political Subdivisions § 10 *et seq.*
[5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 4 *et seq.*
[6] 15A Am Jur 2d, Colleges and Universities § 2.

2. Statutes — Penal Statutes — Judicial Construction.

Penal statutes are to be strictly construed; however, such construction does not require rejection of that sense of the words which best harmonizes with the overall context of the statute and the end purpose sought to be achieved by such legislation.

3. Statutes — Penal Statutes — Judicial Construction.

The rule of strict construction of penal statutes does not require that a statute be given its narrowest possible meaning, but only that the words be given their fair meaning in accord with the evident intent of the Legislature.

4. State — Political Subdivision.

The attributes which are generally regarded as distinguishing a political subdivision are its existence for the purpose of discharging some function of local government, its prescribed area, and its authority for self-government through officers selected by it.

5. Words and Phrases — "Political Subdivision".

The term "political subdivision" is both broad and comprehensive and denotes any division of a state made by the proper authorities for the purpose of carrying out a portion of those functions of the state which by long usage and the inherent necessities of government have always been regarded as public; it is not necessary that a political subdivision exercise all the functions of the state, but is sufficient if it is authorized to exercise a portion of them.

6. Colleges and Universities — Community College Districts — Political Subdivision of State — Counterfeiting.

A community college district is a political subdivision of the state for purposes of the statute which prohibits the possession or use of tools and implements for counterfeiting bills or notes of the state or any of its political subdivisions or municipalities (MCL 750.255; MSA 28.452).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Kay F. Pearson,* Assistant Prosecuting Attorney, for the people.

*Demetriou, Shinners & St. Claire,* for defendants.

Before: Danhof, C.J., and M. F. Cavanagh and D. R. Freeman,* JJ.

Per Curiam. Defendants were charged with possession of tools and implements for producing counterfeit checks of the General Motors Saginaw Gear Steering Division and Delta College, allegedly in violation of MCL 750.255; MSA 28.452. The people appeal by right the trial judge's grant of defendants' motion to quash the informations against them. The trial judge held that the statute under which defendants were charged did not apply to their conduct. On appeal, the people claim that MCL 750.255; MSA 28.452 applies to the possession of tools and implements for counterfeiting checks drawn on the account of a community college, such as Delta College.

MCL 750.255; MSA 28.452 states:

"Any person who shall engrave, make or mend, or begin to engrave, make or mend, any plate, block, press or other tool, instrument or implement, or shall make or provide any paper or other material, adapted or designed for the forging and making any false or counterfeit note, certificate or other bill of credit in the similitude of the notes, certificates, bills of credit issued by lawful authority for any debt of this state, or any of its political subdivisions or municipalities, or any false or counterfeit note or bill in the similitude of the notes or bills issued by any bank or banking company established in this state, or within the United States, or in any of the British provinces in North America, or in any foreign state or country; and *any person who shall have in his possession any such plate or block, engraved in whole or in part, or any press or other tool, instrument or implement, or any paper or other material, adapted and designed as aforesaid, with intent to use the same, or to cause or permit the same to be used in forging or making any such false or counterfeit certifi-*

---

* Circuit judge, sitting on the Court of Appeals by assignment.

*cates, bills or notes,* shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years or by fine of not more than 5,000 dollars." (Emphasis added.)

The trial judge held that checks drawn by Delta College on its funds deposited in a commercial bank were no different than the checks of a private corporation and were not "notes, certificates, bills of credit issued by lawful authority for any debt of this state, or any of its political subdivisions or municipalities". This Court has held that identical language in MCL 750.253; MSA 28.450 applies to commercial checks drawn on the account of a county, *People v Beckner,* 92 Mich App 166; 285 NW2d 52 (1979), and a city, *People v Jackson,* 98 Mich App 735; 296 NW2d 348 (1980). We agree with the opinion in *People v Beckner, supra,* that the statutes addressing the forgery and uttering and publishing of public instruments refer not to instruments drawn on public entities but to instruments *issued by* public entities. Likewise, in interpreting the counterfeiting tools statute, the specific language of the statute covers instruments issued by the state or its political subdivisions though not necessarily drawn on them.

We also reject defendants' claim that Delta College, a community college district organized under state law, is not a "political subdivision" of the state for purposes of MCL 750.255; MSA 28.452. Although penal statutes are strictly construed, such construction does not require rejection of that sense of the words which best harmonizes with the overall context of the statute and the end purpose sought to be achieved by such legislation. *People v Hall,* 391 Mich 175, 189-190; 215 NW2d 166 (1974). The rule of strict construction of penal statutes does not require that a statute be given its narrow-

est possible meaning, but only that the words be given their fair meaning in accord with the evident intent of the Legislature. *United States v Raynor,* 302 US 540, 552; 58 S Ct 353; 82 L Ed 413 (1938).

The attributes which are generally regarded as distinguishing a political subdivision are its existence for the purpose of discharging some function of local government, its prescribed area and its authority for self-government through officers selected by it. *Dugas v Beauregard,* 155 Conn 573, 578; 236 A2d. 87 (1967), *McClanahan v Cochise College,* 25 Ariz App 13, 16; 540 P2d 744 (1975). The term "political subdivision" is both broad and comprehensive and denotes any division of a state made by the proper authorities for the purpose of carrying out a portion of those functions of the state which by long usage and the inherent necessities of government have always been regarded as public. It is not necessary that a political subdivision exercise all the functions of the state, but is sufficient if it is authorized to exercise a portion of them. *Comm'r of Internal Revenue v Shamberg's Estate,* 144 F2d 998, 1004 (CA 2, 1944), 72 CJS, Political, p 223.

Const 1963, art 8, § 7 requires the Legislature to provide by law for the establishment and financial support of public community colleges to be supervised and controlled by locally elected boards. The governing body of the district is elected at large by the voters of the district. The district is a body corporate which may sue and be sued and may take, condemn, use, hold, sell, lease and convey real property without restriction as to location. MCL 389.103; MSA 15.615(1103). The governing board has the power to make plans for, promote, acquire, construct, own, develop, maintain and

operate a community college and a vocational-technical education program. The board may borrow, subject to the provisions of 1943 PA 202, as amended, such sums of money on such terms as it deems desirable. It is authorized to borrow money and issue bonds for the obligation incurred, pursuant to MCL 389.122; MSA 15.615(1122) and MCL 389.126; MSA 15.615(1126). The district is specifically granted authority to adopt "bylaws, rules and regulations for its own government and for the control and government of the community college district". MCL 389.125; MSA 15.615(1125). The district is also empowered to do all other things in its judgment necessary for the proper establishment, maintenance, management and carrying on of the community college. MCL 389.125(f); MSA 15.615(1125)(f).

We view three factors as most important in leading to the conclusion that a community college district is a "political subdivision" of the state for purposes of MCL 750.255; MSA 28.452. First, the governing body of the district is responsible only to its own electorate for its management of the district. No other political subdivision of the state exercises authority over the community college board. Second, the Legislature explicitly granted the board authority to adopt rules and regulations for its own government and for the control and government of the district. Third, the district's borrowing power is broad and similar to that of other political subdivisions of the state. We think that a community college district comes clearly within the plain meaning of the term "political subdivision".

The primary rule of statutory construction, however, is to determine and effectuate the Legislature's intent. For that reason, a more restrictive

meaning of "political subdivision" might be used where the purposes to be served by the statute would be defeated by use of a general definition. In the present case, an analysis of the Legislature's purpose requires the use of the general definition. Community college districts do not significantly differ from "municipalities" in the types of paper pledging their credit which they issue. The Legislature's purpose in enacting MCL 750.255; MSA 28.452 was to protect the integrity of paper pledging the credit of political entities. In the present case, we can only give full effect to the words of the Legislature by holding that a community college district is a "political subdivision" of the state for purposes of MCL 750.255; MSA 28.452.

Reversed and remanded.