*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAXPAYERS FOR MICHIGAN
CONSTITUTIONAL GOVERNMENT, STEVE
DUCHANE, RANDALL BLUM, and SARA
KANDEL,

        Plaintiffs,

v

STATE OF MICHIGAN, DEPARTMENT OF
TECHNOLOGY, MANAGEMENT AND
BUDGET, OFFICE OF AUDITOR GENERAL,
GOVERNOR OF THE STATE OF MICHIGAN, and
DIRECTOR OF THE DEPARTMENT OF
TECHNOLOGY, MANAGEMENT, AND
BUDGET,

        Defendants.

FOR PUBLICATION
December 22, 2022
9:00 a.m.

No. 334663
Original Action

ON REMAND

Before: BORRELLO, P.J., and SHAPIRO and GADOLA, JJ.[1]

BORRELLO, P.J.

      This original action to enforce the Headlee Amendment, Const 1963, art 9, § § 25-34, returns to this Court on remand from our Supreme Court. As observed by our Supreme Court, "[a]t issue in this case is a dispute over what monies should be included in calculating 'total state spending paid to all units of Local Government' under § 30 of the Headlee Amendment, Const 1963, art 9, § 30." *Taxpayers for Michigan Constitutional Government v State of Michigan*, 508 Mich 48, 56; 972 NW2d 738 (2021) (*TMCG*). Our Supreme Court has tasked this Court with determining, in the first instance, "whether state funding to PSAs [Public School Academies] authorized by a school district, an intermediate school district [ISD], or a community college

---

[1] Judge Gadola was selected by blind draw to replace our now retired colleague.

should be counted as state spending to a unit of local government for purposes of § 30 of the Headlee Amendment." *TMCG*, 508 Mich at 76. This Court is also tasked with reconsidering its decision to grant plaintiffs mandamus "as it deems appropriate" and to "take other action not inconsistent with this opinion." *TMCG*, 508 Mich at 81, 86. The parties and the amici have submitted supplemental briefing. Plaintiffs have amended their complaint in an attempt to cure the deficiencies in the pleading of their mandamus request, as identified by our Supreme Court. We hold that state funding to PSAs authorized by a school district, an ISD, or a community college other than the Bay Mills Community College must be counted as state spending to a unit of local government for purposes of § 30 of the Headlee Amendment. Accordingly, we deny plaintiffs' petition for mandamus as plaintiffs have failed to demonstrate an entitlement to mandamus relief.[2]

## Payments to PSA Authorizing Bodies

As noted, we have been tasked with determining whether state funding to PSAs authorized by a school district, an ISD, or a community college should be counted as state spending to a unit of local government for purposes of § 30 of the Headlee Amendment. Section 30 provides:

> The proportion of total state spending paid to all units of Local Government, taken as a group, shall not be reduced below that proportion in effect in fiscal year 1978-79. [Const 1963, art 9, § 30.]

Section 33 of the Amendment defines the term "Local Government" as "any political subdivision of the state, including, but not restricted to, school districts, cities, villages, townships, charter townships, counties, charter counties, authorities created by the state, and authorities created by other units of local government." Const 1963, art 9, § 33.

For the reasons detailed below, we hold that school districts, ISDs, and community college districts are units of local government for purposes of § 30. We also hold that state funding paid

---

[2] By order entered on November 23, 2021, this Court granted plaintiffs' motion to file an amended complaint and, thereby, allowed plaintiffs the opportunity to cure the deficiencies in the pleading of their mandamus request. *Taxpayers for Michigan Constitutional Government v State of Michigan*, unpublished order of the Court of Appeals, issued November 23, 2021 (Docket No. 334663). The amended complaint filed with this Court retained plaintiffs' claims concerning public school funding under Proposal A (Count I) and funding paid to local units of government in satisfaction of the state's funding obligations under § 29 of the Headlee Amendment, Const 1963, art 9, § 29 (Count III). Defendants now seek summary disposition as to Counts I and III. The amendments authorized by this Court did not revive the claims pleaded in Counts I and III. More importantly, our Supreme Court remanded the instant matter to this Court for two express purposes, neither of which involve revisiting the merits of Counts I and III. This Court is bound by the "rule of mandate" to strictly comply with, and not to exceed the scope of, a remand order. *International Business Machines Corp v Department of Treasury*, 316 Mich App 346, 350-351; 891 NW2d 880 (2016). The Court has neither the authority nor the justification to revisit either its or our Supreme Court's rulings disposing of Counts I and III. Because the issues advanced in Counts I and III are not before this Court, summary disposition is inappropriate. Accordingly, the motion for summary disposition is dismissed.

to PSAs authorized by these three units of local government must be counted as state spending to a unit of local government for purposes of § 30. A PSA is a species of public school that coexists with traditional public schools. These two species of public schools provide local units of government with the means for the delivery of free local public education services. The state funds the operation of these two species of public schools by paying a per-pupil foundation allowance to each school district, as well as to ISDs and community college districts that have authorized PSAs within their limited geographical areas of operation. In other words, the state pays this foundation allowance to units of local government. These units of local government, in turn, disburse this local public education funding provided by the state in the manner prescribed by our Legislature to pay the costs incurred by each species of public school in the delivery of free local public education, and by doing so, further our Legislature's obligation to maintain and support a system of free public education. See Const 1963, art 8, § 2.

Our conclusions follow from an analysis that is guided by the rule of common understanding. *Adair v Michigan*, 497 Mich 89, 101; 860 NW2d 93 (2014); *CVS Caremark v State Tax Comm*, 306 Mich App 58, 61; 856 NW2d 79 (2014). "Under the rule of common understanding, this Court must apply the meaning that, at the time of ratification, was the most obvious common understanding of the provision, the one that reasonable minds and the great mass of the people themselves would give it." *CVS Caremark*, 306 Mich App at 61.

We begin our analysis by acknowledging that our Legislature authorized the creation of PSAs in their current form in 1993 PA 362, which is commonly referred to as the charter schools act. MCL 380.501 et seq.; *Council of Organizations and Others for Education about Parochiaid, Inc v Governor*, 455 Mich 557, 560-561; 566 NW2d 208 (1997). Act 362 recognizes the following public bodies as authorizing bodies that may issue a contract to organize and operate a PSA: (1) the board of a school district that operates grades K to 12; (2) the board of an ISD; (3) the board of a community college; and (4) the governing board of a state university. MCL 380.501(a)(*i*)-(*iv*); MCL 380.502(2).

We also acknowledge that our Supreme Court recently ruled that a state university, although a public school authorizing body, is not a political subdivision of the state under § 33. *TMCG*, 508 Mich at 75-76. As a consequence, state spending paid to a state university cannot qualify as state spending to a unit of local government under § 30. In light of this ruling, the first question this Court must answer is whether any or all of the three remaining public school authorizing bodies may be considered to be a political subdivision of the state under § 33 and, thus, a unit of local government under § 30.

To answer this question, we begin with the language of § 33. Section 33 explicitly provides that the term "Local Government" includes "school districts." Const 1963, art 9, § 33; *TMCG*, 508 Mich at 67. We need go no further than the plain language of § 33 to discern that a school district that is also a PSA authorizing body constitutes a local government for purposes of § 30.

Because § 33 does not mention ISDs or community colleges, we must determine whether either or both are a "political subdivision of the state" under § 33 and, thus, a "Local Government" for purposes of Headlee. The term "political subdivision of the state" means "a geographically limited unit of government formed to exercise political power and that is beholden to a local electorate." *TMCG*, 508 Mich at 72.

Whether an ISD possesses the attributes of a political subdivision of the state and, thus, constitutes a unit of local government, presents a question of first impression. A review of the statutory provisions governing the creation and operation of an ISD reveals that an ISD is a body corporate governed by an intermediate school board, MCL 380.604, with the authority to act within the boundaries of its constituent school districts, MCL 380.626. The Legislature has empowered an intermediate school board to carry out the government functions of educating pupils, MCL 380.601a(1)(a), hiring employees and independent contractors to "carry out intermediate school district powers," MCL 380.601a(1)(d), qualifying for state school aid, MCL 380.601a(1)(d), and entering into contracts "as part of performing the functions" of the ISD, MCL 380.601a(2). Members of the intermediate school board are elected biennially by "an electoral body" composed of one person designated by the board of each constituent school district, MCL 380.614(1), or through "popular elections in an intermediate school district which adopts [MCL 380.615 to MCL 380.617]." MCL 380.615. In other words, the public maintains control of an ISD either through popular elections or the popularly-elected boards of the school districts that compose the electoral body of an ISD. See *Council of Organizations*, 455 Mich at 575-576 ("While the boards of the public school academies may or may not be elected, the public maintains control of the schools through the authorizing bodies."). We find these characteristics of an ISD to be sufficient to establish that an ISD bears the distinctive "marks" of a political subdivision, i.e., an ISD serves primarily the residents of its own geographically-limited district and is subject to popular control. *TMCG*, 508 Mich at 71-73. Thus, we hold that an ISD qualifies as a political subdivision of the state and a unit of local government under § § 30 and 33.

Our consideration of whether a community college also qualifies as a political subdivision of the state begins with the recognition that Michigan has 28 community college districts that cover 32 of the 83 counties of this state. Kozlowski, *Free community college tuition in Mich.? Not for all*, The Detroit News (February 9, 2022), p A2 (map insert). We hold that 27 of these 28 community college districts qualify as political subdivisions of the state and, thus, are units of local government within the meaning of § § 30 and 33. We hold that the Bay Mills Community College District lacks the distinctive marks of a political subdivision of the state that the other 27 community college districts have and, thus, is neither a political subdivision of the state nor a unit of local government under Headlee.

In *Doan v Kellogg Community College*, 80 Mich App 316, 321; 263 NW2d 357 (1977), this Court provided the following cogent summary of the characteristics of a community college district as authorized by our Legislature:

> Community colleges are governed by MCLA 389.1, *et seq*.; MSA 15.615(101), *et seq*. Under this statute, a community college district is created by a local vote, not by the constitution nor by an act of the Legislature. From the statement of findings by the trial judge, it appears that the Kellogg Community College district is the same as the intermediate school district. Therefore, the decision to create the community college district was based on a vote of the people in the intermediate school district. MCLA 389.51; MSA 15.615(151). Additionally, the board of trustees of the community college are elected locally. MCLA 389.54; MSA 15.615(154). The tax rate for financing the school is also determined by a local vote. In fact, if the proposition to establish a maximum annual tax rate fails after being submitted three times, the community college

district is dissolved. MCLA 389.55; MSA 15.615(155). Furthermore, the purpose of the community college is local, *i.e.*, to provide education to persons in the community. MCLA 389.105; MSA 15.615(1105). The community college serves primarily residents in its own district and an additional fee is charged if a nonresident is enrolled. Thus, the intent of the Legislature is that community colleges should be local in nature.

In *People v Egleston*, 114 Mich App 436, 441-442; 319 NW2d 563 (1982), this Court determined that a community college district, as authorized by MCL 389.1 et seq., constituted a political subdivision of the state for purposes of MCL 750.225. We explained:

Const 1963, art 8, § 7 requires the Legislature to provide by law for the establishment and financial support of public community colleges to be supervised and controlled by locally elected boards. The governing body of the district is elected at large by the voters of the district. The district is a body corporate which may sue and be sued and may take, condemn, use, hold, sell, lease and convey real property without restriction as to location. MCL 389.103; MSA 15.615(1103). The governing board has the power to make plans for, promote, acquire, construct, own, develop, maintain and operate a community college and a vocational-technical education program. The board may borrow, subject to the provisions of 1943 PA 202, as amended, such sums of money on such terms as it deems desirable. It is authorized to borrow money and issue bonds for the obligation incurred, pursuant to MCL 389.122; MSA 15.615(1122), and MCL 389.126; MSA 15.615(1126). The district is specifically granted authority to adopt "bylaws, rules and regulations for its own government and for the control and government of the community college district." MCL 389.125; MSA 15.615(1125). The district is also empowered to do all other things in its judgment necessary for the proper establishment, maintenance, management and carrying on of the community college. MCL 389.125(f); MSA 15.615(1125)(f).

We view three factors as most important in leading to the conclusion that a community college district is a "political subdivision" of the state for purposes of MCL 750.255; MSA 28.452. First, the governing body of the district is responsible only to its own electorate for its management of the district. No other political subdivision of the state exercises authority over the community college board. Second, the Legislature explicitly granted the board authority to adopt rules and regulations for its own government and for the control and government of the district. Third, the district's borrowing power is broad and similar to that of other political subdivisions of the state. We think that a community college district comes clearly within the plain meaning of the term "political subdivision".

The primary rule of statutory construction, however, is to determine and effectuate the Legislature's intent. For that reason, a more restrictive meaning of "political subdivision" might be used where the purposes to be served by the statute would be defeated by use of a general definition. In the present case, an analysis of the Legislature's purpose requires the use of the general definition. Community college districts do not significantly differ from "municipalities" in the types of

paper pledging their credit which they issue.  The Legislature's purpose in enacting MCL 750.255; MSA 28.452 was to protect the integrity of paper pledging the credit of political entities.  In the present case, we can only give full effect to the words of the Legislature by holding that a community college district is a "political subdivision" of the state for purposes of MCL 750.255; MSA 28.452.  [*Egleston*, 114 Mich App at 441-442.]

Twenty-seven of the 28 community college districts share the characteristics identified in *Doan* and *Egleston*, which include the distinctive marks of a unit of local government.  Because they do, these 27 community college districts qualify as political subdivisions of the state and, thus, are units of local government within the meaning of § § 30 and 33.

Turning to the Bay Mills Community College District, its characteristics were summarized in *Michigan Education Association v Superintendent of Public Instruction*, 272 Mich 1, 3-4; 724 NW2d 478 (2006), as follows:

BMCC is a land grant school recognized under the federal Tribally Controlled College or University Assistance Act and is accredited by the North Central Association of Colleges and Schools.  According to its charter, BMCC's district consists of the state of Michigan.[3]  . . .

BMCC is run by a nine-member board of regents.  Five of those regents are selected from the Bay Mills Indian Community Executive Council and serve two year terms.  One is the business manager or representative of the Sault Ste. Marie Tribe of Chippewa Indians, one is the business manager or representative of the Grand Traverse Band of Ottawa/Chippewa Indians, one is the business manager or representative of the Little Traverse Bay Bands of Odawa Indians, and one is the executive director of the Inter–Tribal Council of Michigan, Inc.  Additionally, there is one nonvoting member, the student body president of BMCC.

A comparison of the Bay Mills Community College District and the other 27 districts reveals that Bay Mills has some characteristics not shared with the other districts.  We find these unique characteristics possessed only by the Bay Mill Community College District to be dispositive of the question whether Bay Mills possesses the attributes of a political subdivision of the state.

---

[3] Article XI of the Bay Mills Community College Charter provides in relevant part: "The district for the Bay Mills Community College shall consist of the State of Michigan." <http://www.bmcc.edu/sites/default/files/100.101_bmcc_charter.pdf> (accessed November 22, 2022).

Under Michigan's community college act, 1966 PA 331, a community college district is composed of one or more counties or one or more school districts[4] that join together to form a community college district by a majority vote of the electors residing in the proposed district. MCL 389.11; MCL 389.31; MCL 389.32; MCL 389.55. The Bay Mills Community College Charter expressly identifies its district as the entirety of the State of Michigan. In this regard, the boundaries of the Bay Mills Community College District, like those of a public university, are not geographically limited. *TMCG*, 508 Mich at 75. They exceed those allowed by the community college act. Moreover, although the Bay Mills Community College District treats Michigan's boundaries as its own, it is not responsive to the statewide electorate. In fact, the parties present no evidence that either Bay Mills Indian Community or the Bay Mills Community College District is responsive to an electorate of any size, let alone "to voters of any particular locale." *TMCG*, 508 Mich at 75. A review of art IV[5] of the Constitution of the Bay Mills Indian Community reveals that "[t]he governing body of the Community shall be the General Tribal Council which shall be composed of all qualified voters of the Community." The term qualified voter is a member of the tribe who is 18 years of age or older.[6] Membership is governed by Article III of the Constitution of the Bay Mills Indian Community. The Bay Mills Indian Community currently has 1,657 voting citizens.[7] There is nothing in either Article III or Article IV that requires a qualified voter to reside on the Bay Mills reservation, or even reside in Michigan, in order to be a qualified voter. Under these circumstances, Bay Mills is neither geographically limited nor beholden to the voters of any particular locale in the fashion of a community college district authorized under the community college act. It does not possess the distinctive marks of a political subdivision of the state that traditional community college districts possess.

Additionally, unlike the other 27 community college districts, Bay Mills was not created under the authority of the Michigan community college act and by "local vote" of "any particular locale." Rather, Bay Mills Community College is a community college district under the control of a federally-recognized Indian tribe, that was brought into being with the assistance of the federal government under the tribally controlled community college assistance act of 1978, Public Law 95-471 [25 USC 1801 to 1864]. See e.g., 25 USC 1804a, 1806. As noted by our Supreme Court in *Paquin v St. Ignace*, 504 Mich 124, 135; 934 NW2d 650 (2019), the existence of a "unique relationship" between the United States federal government and tribal governments "highlights the difference between tribal governments and local subunits of a state government."

We acknowledge, however, that our Legislature has authorized federal tribally-controlled community college districts, like Bay Mills, to function as a community college district formed under the community college act. See e.g., MCL 380.1475; MCL 390.1251; 390.1572; MCL 380.501; MCL 380.502. In *TMCG*, our Supreme Court concluded that the fact that our Legislature

---

[4] The term " 'school district' means a school district, a local act school district, or an intermediate school district, as those terms are defined in the revised school code, 1976 PA 451, MCL 380.1 to MCL 380.1852[.]" MCL 389.105(g).

[5] <http://www.baymills.org/tribal-constitution> (accessed September 8, 2022).

[6] <http://www.baymills.org/tribal-organization> (accessed September 8, 2022).

[7] <http://www.baymills.org/tribal-organization> (accessed September 8, 2022).

affixed the label "school district" to PSAs for funding purposes was an insufficient basis to conclude that a PSA was also a "school district" as contemplated by the Headlee Amendment. *TMCG*, 508 Mich at 68-69. According to our Supreme Court, "that the *Legislature* authorized the creation of PSAs and treats them as school districts for the specific purpose of receiving aid from the State School Aid Fund tells us nothing about whether the *voters* would have understood a PSA to be a 'local government' for purposes of the Headlee Amendment." *Id*. at 69 (italics in original). As previously noted, the Bay Mills Community College District lacks the distinctive marks crucial to establish its status as a political subdivision of the state. At best, the powers granted Bay Mills by our Legislature renders Bay Mills the functional equivalent of a traditional community college district, and nothing more. That the Bay Mills Community College District may function similarly to the other 27 community college districts does not render Bay Mills a unit of local government where there is nothing in either § 30 or § 33 that suggests that the equivalent of a unit of local government suffices. To conclude otherwise would be to write language into these Headlee provisions that is not there and that the people of our state did not choose to include. *Paquin*, 504 Mich at 135.

In sum, for the reasons identified above, the Bay Mills Community College District, like other forms of tribal government, is not a political subdivision of the state and, hence, not a unit of local government as that term is used in either § 30 or 33. It lacks the distinctive marks of a local government recognized under Michigan law. The voters that adopted the Headlee Amendment simply would not have commonly understood the term "local government" to include subunits of a tribal government.

Although school districts, ISDs, and community college districts are units of local government, it is clear that PSAs are not. *TMCG*, 508 Mich at 72-73, 75-76. It is also clear, however, that "[a] PSA is a state-supported public school operating under a charter issued by an authorizing body." *TMCG*, 508 Mich at 67-68; see also *Council of Organizations*, 455 Mich at 571-579; MCL 380.501(1). This particular species of public school was created by our Legislature as a proper exercise of its authority conferred upon it by Const 1963, art 8, § 2 to "maintain and support a system of free public education . . . ." *Council of Organizations*, 455 Mich at 571-579. "The Legislature has had the task of defining the form and institutional structure through which public education is delivered in Michigan since the time Michigan became a state. See Const 1835, art 10, § 3." *Council of Organizations*, 455 Mich at 571. A PSA has been commonly understood to be a public school since the early 1990s. See *Council of Organizations*, 455 Mich at 576-583.

Having clarified that school districts, ISDs, and community college districts are units of local government and that a PSA is a species of public school, the question becomes "whether state funding to PSAs authorized by a school district, an ISD, or a community college should be counted as state spending to a unit of local government for purposes of § 30 of the Headlee Amendment." We answer this question in the affirmative.

As previously noted, a PSA is commonly understood to be a public school. *Council of Organizations*, 455 Mich at 576-579. Currently, both PSAs and traditional public schools are funded through the use of a per-pupil foundational allowance. In the case of traditional public schools, the state pays the per-pupil foundation allowance to each school district, and the school district then uses the funds to pay the costs of providing education services at each public school

in the district. *Durant*, 238 Mich App at 197-198. In the case of a PSA, the state pays the foundational allowance to the public school authorizing body, i.e., a school district, an ISD, or a community college. MCL 380.507(3). The public school authorizing body then serves as a "fiscal agent" for the PSA. MCL 380.507(3). This body receives the funding from the state and then transfers the school aid payment directly to the PSA. MCL 380.507(3). What is clear to this Court is that under either disbursement scheme state aid flows from the state to a unit of local government, and the unit of local government then disburses state funding in the manner prescribed by the Legislature to fund the costs of public school instruction. State funding to a unit of local government is state funding to a local unit of government regardless whether a public school actually takes physical possession of the state aid. For these reasons, we conclude that state school aid paid to a PSA by its authorizing body qualifies as state funding paid to a local government and should be counted for purposes of "total state spending paid to all units of Local Government" under § 30 of the Headlee Amendment.

**Mandamus**

Plaintiffs seek a writ of mandamus directing the various state defendants to comply with the reporting requirements of MCL 21.235 and MCL 21.241. These statutes require public disclosure of the amount of state disbursements required to be paid to each local unit of government for the necessary costs of each state requirement and the total amount of all disbursements to be paid to local government, as well as other data potentially useful to determining whether the state has complied with its obligations under § § 29 and 30 of the Headlee Amendment.

Mandamus is an extraordinary remedy. *Univ Medical Affiliates, PC v Wayne County Executive*, 142 Mich App 135, 142; 369 NW2d 277 (1985). Thus, the issuance of a writ of mandamus is only proper where (1) the party seeking the writ has a clear legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial, and (4) no other remedy exists, legal or equitable, that might achieve the same result. *Rental Properties Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 518; 866 NW2d 817 (2014). "Within the meaning of the rule of mandamus, a 'clear, legal right' is one 'clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided." *Univ Medical Affiliates*, 142 Mich App at 143; see also *Rental Properties Owners Ass'n of Kent Co*, 308 Mich App at 518-519. "A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Hillsdale Co Senior Services, Inc v Hillsdale Co*, 494 Mich 46, 63 n 11; 832 NW2d 728 (2013) (quotation marks and citation omitted); see also *Berry v Garrett*, 316 Mich App 37, 42; 890 NW2d 882 (2016). "The burden of showing entitlement to the extraordinary remedy of a writ of mandamus is on the plaintiff." *White-Bey v Dep't of Corrections*, 239 Mich App 221, 223; 608 NW2d 883 (1999). Mandamus is the appropriate remedy for a party seeking to compel action by "state officers." MCL 600.4401(1).

We deny the requested mandamus relief for two reasons.[8]  First, plaintiffs do not identify any statutory duty or "clear legal duty" on the part of the Auditor General or the Office of the Auditor General that arises from the reporting requirements of MCL 21.235 and MCL 21.241.  Second, plaintiffs have made no attempt to refute defendants' claim that they have complied with the reporting requirements.  Defendants represent in their supplemental brief that they have complied with the reporting requirements of MCL 21.235 and MCL 21.241.  In support of this assertion, defendants append to their supplemental brief, as defendants' exhibits B and C, two reports that, on their face, appear to satisfy the requirements of these two statutes.  Plaintiffs do not challenge the veracity of defendants' claims.  They make no attempt to explain how the proffered reports fail to comply with the statutory reporting requirements.  Nor do plaintiffs append any documentation to their reply that contradicts defendants' assertion of compliance.  Under these circumstances, plaintiffs have failed to demonstrate any entitlement to a writ of mandamus.

/s/ Stephen L. Borrello
/s/ Michael F. Gadola

---

[8] Defendants seek the summary dismissal of the Governor as a party defendant on the ground that mandamus may not issue against a Governor.  It is clear that separation-of-powers principles found in Const 1963, art 3, § 2 preclude mandamus against the Governor, regardless of whether the actions sought to be compelled are discretionary or ministerial. *Straus v Governor*, 459 Mich 526, 532; 592 NW2d 53 (1999); *Born v Dillman*, 264 Mich 440, 444-448; 111 NW2d 113 (1961); *Germaine v Governor*, 176 Mich 585, 588-595; 142 NW 738 (1913); *People ex rel Sutherland v Governor*, 29 Mich 320; 18 Am Rep 89 (1874).  Nevertheless, this Court need not address the issue where plaintiffs have otherwise failed to establish their entitlement to a writ of mandamus.