*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THIRTY-SIXTH DISTRICT COURT,

        Plaintiff-Appellant,

v

KELLI M. OWEN,

        Defendant-Appellee.

FOR PUBLICATION
March 2, 2023
9:15 a.m.

No. 359059
Wayne Circuit Court
LC No. 21-005403-CZ

Before: M.J. KELLY, P.J., and BOONSTRA and SWARTZLE, JJ.

SWARTZLE, J.

Our Constitution prohibits a public officer from receiving a bonus for past service. This is fatal to defendant's claim for payment of a bargained-for bonus, even though the bonus was ostensibly intended as a retirement incentive as well as in recognition for past service. Under the undisputed facts of this case, defendant announced her retirement almost two weeks prior to the contract revision that added the bonus. This was, simply speaking, solely a retroactive bonus to a public officer, and therefore paying it would have been unlawful. The incoming chief judge of the 36th District Court correctly refused to pay the bonus, and the circuit court erred in denying the district court's motion for summary disposition. Reversed and remanded for proceedings consistent with this opinion.

## I. BACKGROUND

Kelli Owen was the Clerk of the 36th District Court and its chief administrator for more than five years before she retired on December 31, 2019. Owen acknowledged that she was appointed as Clerk of the Court under MCL 600.8281. Her employment contract specified that she was under "the general direction of the Chief Judge" to direct "all nonjudicial functions of the Court." This included "personnel management, planning, fiscal, case flow and facilities management, as well as Information Technology, Court Security, Traffic and Ordinance, Civil/Real Estate, and Probation."

On November 22, 2019, our Supreme Court announced that, on January 1, 2020, the 36th District Court's then-chief judge, Judge Nancy Blount, would be replaced as chief judge by Judge William McConico. On December 5, 2019, Owen announced that she would retire on December

31, 2019. Then-Chief Judge Blount subsequently approved a revision to Owen's employment contract on December 18, 2019. The revised contract added a new section dealing with "retirement incentive/performance pay":

> If Employee retires with an effective date prior to June 30, 2020 the Court shall provide a one-time performance payment to the Employee in the amount of 50% of Employee's salary at the time of retirement, as a retirement incentive and in recognition of the Employee's vital role and contribution to the Court's turn around.

Owen did, as she had previously announced, retire on December 31, 2019.

Shortly after Judge McConico became chief judge on January 1, 2020, the district court refused to pay the bonus to Owen. Owen filed a complaint with the Wage and Hour Division of the Department of Labor and Economic Opportunity. The administrative division held that Owen was contractually entitled to the bonus, but it recognized that it could not rule on whether the payment was itself lawful.

The 36th District Court sued Owen in circuit court, seeking declaratory relief that the revised contract is unconstitutional, unsupported by valid consideration, and the result of ultra vires conduct. Both parties moved for summary disposition, and the circuit court denied the motions as premature because discovery was ongoing.

The 36th District Court now appeals by leave granted. *36th District Court v Owen*, unpublished order of the Court of Appeals, entered January 31, 2022 (Docket No. 359059).

## II. ANALYSIS

The 36th District Court moved for summary disposition under MCR 2.116(C)(10). "We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020) (cleaned up). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Sherman*, 332 Mich App at 632.

### A. CONST 1963, ART 11, § 3

The 36th District Court begins its argument for summary disposition with our Constitution, specifically article 11, § 3 of the Constitution of 1963. The district court argues that the contract revision violates this provision, which states in full: "Neither the legislature nor any political subdivision of this state shall grant or authorize extra compensation to any public officer, agent or contractor after the service has been rendered or the contract entered into." This Court has held that the "plain language of this provision forbids paying, or authorizing payment for, a [public officer, agent, or contractor] retroactively for services the member has already performed." *Attorney General v Flint City Council*, 269 Mich App 209, 212; 713 NW2d 782 (2005).

-2-

Although not addressed by either party, we must first determine whether art 11, § 3 even applies to Owen. To do so, we must consider whether the 36th District Court is a "political subdivision of this state" as well as whether Owen is a "public officer, agent or contractor." We begin by considering what is a political subdivision of the state.

A provision similar to our current art 11, § 3 was originally included in our Constitution of 1850, but that earlier provision did not include the term, "political subdivision of this state." See Const 1850, art 4, § 21. This original provision was modified as part of our 1908 Constitution, though the modified provision likewise did not include the term "political subdivision of this state"; instead, it prohibited "any municipal authority" from "granting extra compensation." Const 1908, art 16, § 3. It was not until the ratification of our current Constitution of 1963 that the term "political subdivision of this state" was added to the provision.

This multi-word term of art—"political subdivision of this state"—is mentioned (in substance, if not identical phrasing) elsewhere in our Constitution of 1963, but nowhere is the term defined in that supreme law. Our Supreme Court recently analyzed the question whether public-school academies were considered "political subdivisions of the state" under the Headlee Amendment, Const 1963, art 9, §§ 6, 33. *Taxpayers for Michigan Constitutional Gov't v Dep't of Technology, Mgt and Budget*, 508 Mich 48; 972 NW2d 738 (2021). In analyzing the Headlee Amendment, the Court explained that voters at the time of that amendment (1978) would have understood "political subdivision of the state" to mean "a geographically limited unit of government formed to exercise political power and that is beholden to a local electorate." *Id.* at 72. Moreover, when our current Constitution was ratified, our then-Attorney General had a similar understanding, as recognized by the Court:

> [T]he Attorney General considered whether a county drainage district constituted a political subdivision of the state. As a general matter, said the Attorney General, "political divisions of the state are those which are formed for the more effectual or convenient exercise of political power within . . . particular localities" and have certain "distinctive marks." These distinctive marks include that a political subdivision of a state will
>
>> embrace a certain territory and its inhabitants, organized for the public advantage, and not in the interest of particular individuals or classes; that their chief design is the exercise of governmental functions, and that to the electors residing within each is, to some extent, committed the power of local government, to be wielded either mediately or immediately, within their territory, for the peculiar benefit of the people there residing. [*Id.* at 71-72, quoting OAG, 1963-1964, No. 4,037 (January 2, 1963).]

Consistent with *Taxpayers*, this Court held in *People v Egleston*, 114 Mich App 436, 440; 319 NW2d 563 (1982), that several attributes "generally regarded as distinguishing a political subdivision are its existence for the purpose of discharging some function of local government, its prescribed area and its authority for self-government through officers selected by it."

With a legal term of art like "political subdivision of this state," definitions from a lay dictionary are not particularly helpful. *Bartalsky v Osborn*, 337 Mich App 378, 390; 977 NW2d 574 (2021). With respect to a legal dictionary, the then-current *Black's Law Dictionary* did not have an entry for the term when our Constitution was ratified. The term "political subdivision" was added to the fifth edition of that legal dictionary in 1979, however, and the term is defined in that edition as, "A division of the state made by proper authorities thereof, acting within their constitutional powers, for purpose of carrying out a portion of those functions of state which by long usage and inherent necessities of government have always been regarded as public." *Black's Law Dictionary* (5th ed.). Although this edition came out several years after our Constitution was ratified, we recognize that dictionaries can sometimes be "lagging indicators" of linguistic meaning. *People v Wood*, 506 Mich 114, 123 n 7; 954 NW2d 494 (2020). In any event, the definition of "political subdivision" from the fifth edition of *Black's Law Dictionary* is fully consistent with the general framework developed in our case law.

Given this framework and definition, we conclude that the 36th District Court is a political subdivision of the state for purposes of Const 1963, art 11, § 3. The 36th District Court discharges certain judicial authority of the state, Const 1963, art 6, § 1; the district court is geographically limited to the city of Detroit, MCL 600.8121a; and the district court governs itself through elected and appointed officers, MCL 168.467 et seq.; MCL 600.8281.

Turning next to the question whether Owen was a "public officer," our Supreme Court has distinguished a public officer from a public employee by "the greater importance, dignity and independence of [the] position; in being required to take an official oath, and perhaps to give an official bond." *People v Coutu*, 459 Mich 348, 354; 589 NW2d 458 (1999) (cleaned up). More recently, our Supreme Court set forth five items to consider when determining whether a person holds a public office:

> (1) It must be created by the Constitution or by the Legislature or created by a municipality or other body through authority conferred by the Legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity, and not be only temporary or occasional. [*People v Bruce*, 504 Mich 555, 564; 939 NW2d 188 (2019) (cleaned up).]

Whether these are to be treated as necessary elements or simply helpful factors remains an open question. See *id.* at 564 n 3. Regardless, we conclude that Owens was a public officer.

Specifically, Owen's position as the Clerk of the 36th District Court was created by our Legislature. MCL 600.8281(1). In this role, she exercised authority on behalf the 36th District Court, a part of our "one court of justice." Const 1963 art 6, § 1. Her powers and duties as Clerk of the Court were discharged through express legislative authority. MCL 600.8281 et seq. Even though her duties were performed at the general direction of the chief judge, this direction was

-4-

authorized by our Legislature. MCL 600.8281(3). And finally, the position of Clerk of the 36th District Court is not a temporary or occasional position. MCL 600.8281(4). Given all of this, we conclude that Owen was a public officer for purposes of Const 1963, art 11, § 3, and the constitutional ban against retroactive bonuses applies to her.

## B. THE CONTRACT PROVISION AS-APPLIED

Nevertheless, Owen argues that it was permissible for her to receive a bonus in exchange for her agreement to retire by a future date-certain. In effect, even if one of the grounds for the bonus (retroactive pay) was impermissible, the other ground (incentive to retire) was permissible, in Owen's view. The record belies this argument.

First, the newly added contract provision makes clear on its face that this is a "one-time *performance* payment." An agreement to retire by a particular date can hardly be characterized as on-the-job "performance." This understanding is strengthened by the provision's subsequent express terms recognizing Owen's "*vital role and contribution to the Court's turn around*."

Second, the provision does facially assert that the bonus is also being given "as a retirement incentive." But, the provision is silent on how to apportion the bonus in terms of performance versus retirement incentive. Given this ambiguity, we look beyond the four corners of the contract, *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 478; 663 NW2d 447 (2003), and we consider the undisputed fact that Owen had already announced her year-end retirement date on December 5, 2019, almost two weeks *prior* to the contract revision that added the bonus. Regardless of whether there had been prior discussions about a payment for early retirement, the fact remains that Owen made clear her intent to retire by a date-certain prior to any actual contract revision. One cannot be incentivized to choose an option one has already chosen, and this unconstitutional payment cannot be saved by an illusory incentive.

Accordingly, we hold that there is no genuine issue of material fact that the bonus payment promised to Owen in recognition of her past performance was unconstitutional under Const 1963, art 11, § 3. Although summary disposition under MCR 2.116(C)(10) is generally disfavored when discovery has not yet been completed, *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 24-25; 672 NW2d 351 (2003), we conclude that no further factual development is necessary. The circuit court erred in denying the 36th District Court's dispositive motion on this constitutional ground. Given this, we need not reach plaintiff's alternate arguments for summary disposition.

## III. CONCLUSION

The circuit court erred when it denied summary disposition to the 36th District Court. There is no genuine issue of material fact that the revised employment contract provided a bonus to Owen in recognition of her past performance in violation of Const 1963, art 11, § 3. Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

As the prevailing party, the 36th District Court may tax costs. MCR 7.219.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Mark T. Boonstra